IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRIEDA ZEIDEL, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) ) | Case No. 1:13-CV-06989 |
| | ) | Judge Robert M. Dow, Jr. |
| YM LLC USA, a Delaware limited Liability company, | ) ) ) | |
| Defendant. | ) | |

_____

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
PROPOSED STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
PLAINTIFF'S STATEMENT OF ADDITIONAL FACTS REQUIRING DENIAL OF
SUMMARY JUDGMENT**

Plaintiff FRIEDA ZEIDEL, by her undersigned counsel, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, hereby responds to Defendant YM LLC USA's ("Defendant" or "YM") Proposed Statement of Undisputed Facts in Support of Defendant's Motion for Summary Judgment as follows:

For convenience, the index of all exhibits referenced herein is as follows:

**Exhibit A**: Excerpts of Transcript of January 8, 2015 Deposition of Jessica Ramos.

**Exhibit B**: Excerpts of Transcript of December 17, 2014 Deposition of Kim Berliner.

**Exhibit C**: Excerpts of Transcript of November 12, 2014 Deposition of Frieda Zeidel.

**Exhibit D**: Excerpts of Transcript of December 18, 2014 Deposition of Jan Harvey.

**Exhibit E**: Declaration of Jan Harvey in Support of Defendant YM LLC USA's Motion for Summary Judgment.

**Exhibit F**: Screenshot of the Customer Information input screen that is used by Defendant's employees at the point of sale.

**Exhibit G**: Screenshot of the Customer Maintenance database "Address" tab entry for Plaintiff Zeidel.

**Exhibit H**: Screenshot of the Customer Maintenance database "Transactions" tab entry for Plaintiff Zeidel.

**Exhibit I**: Screenshot of the Customer Maintenance database "Lifetime" tab entry for Plaintiff Zeidel.

1. Defendant YM LLC USA, a Delaware limited liability company, owns and operates the MANDEE brand of retail clothing stores in the United States.

    RESPONSE: Undisputed.

2. Plaintiff Frieda Zeidel (also known as Frieda Grizzi-Zeidel), an individual, is an Illinois resident residing at 4641 N. Ozanam Avenue, Norridge, Illinois 60706.

    RESPONSE: Undisputed.

3. Jurisdiction in this Court is proper as Plaintiff's Complaint is brought under Federal law; namely, the Telephone Consumer Protection Act, 47 U.S.C. Section 227 *et seq.* (the "TCPA").

    RESPONSE: Undisputed.

4. Venue in this Court is proper as Defendant's conduct alleged to violate the TCPA (a single text message sent to Plaintiff's cellphone) took place in this judicial district, where Plaintiff resides.

    RESPONSE: Undisputed.

5. Defendant YM has only one MANDEE retail clothing store in Illinois, located at

1

4178 N. Harlem Avenue, Norridge, Illinois 60706, about a mile and a half from Plaintiff's aforementioned residence on Ozanam Avenue.

RESPONSE: Undisputed.

6. The only MANDEE store customers who are sent text messages are those whose contact information is stored in a Customer Maintenance database.

RESPONSE: Undisputed.

7. The Customer Maintenance database consists only of information voluntarily provided by MANDEE customers, either via the MANDEE website (www.mandee.com) or in response to sales associates' requests as to whether such customers would like to receive text messages with discount offers and notice of new merchandise arrivals. Customer information voluntarily given to a sales' associate in this way is entered into the Customer Maintenance database by a sales associate at the time the sales associate is interacting with the customer.

RESPONSE: Plaintiff does not dispute that the Customer Maintenance database consists only of information voluntarily provided by MANDEE customers, but Plaintiff disputes that the information provided by MANDEE customers was in response to sales associates' "requests as to whether such customers would like to receive text messages with discount offers and notice of new merchandise arrivals." Jessica Ramos, the store manager for the MANDEE store visited by Plaintiff, testified that the information provided by a customer could be in response to a variety of requests, including a sales associate's plain request for a customer's information without any qualification and without any mention of text messages. (Ex. A at 29:16–19, 36:5–13, 41:18–22, 42:13–43:4, 44:13–19; Ex. C at 25:12–13.) Ms. Ramos further testified that there is no way to

2

know after the fact what was said by an employee to a customer, or what the employee said in order to prompt the customer to provide any information, and that the database itself does not identify what information was said to the customer in order to obtain the customer's information. (*Id.*) Additionally, Plaintiff specifically disputes that she provided any information to MANDEE in response to a sales associate's request as to whether she would like to receive text messages. (Ex. C at 20:15–17, 25:14–26:3, 28:6–9, 25:12–13.)

Plaintiff further disputes that information provided by a customer is entered into the Customer Maintenance database by a sales associate at the time the sales associate is interacting with the customer, as sales associates do not have direct access to the Customer Maintenance database, and any information collected from a customer is stored on a local computer in the store and is only at a later point in time uploaded to the Customer Maintenance database. (Ex. A 14:21–15:10; Ex. B at 21:24–22:18, 24:15–23.) Plaintiff also disputes that all customer information provided is entered into the database at the time of the interaction, as sales associates have the ability to access the customer's information and edit it at any time. (Ex. A at 24:23–25:1; Ex. B at 24:24–25:13, 54:17–24.)

Finally, Plaintiff disputes that the Customer Maintenance database is populated only with information provided by a customer at the time of interaction with a sales associate. The "Phone opt-in" database field — which indicates via a "Yes" or "No" whether a customer has opted in to receive text messages — is automatically and by default populated with a "Yes" any time that a customer provides a telephone number, even if a customer never affirmatively stated that he or she wanted to receive text messages. (Ex. B at 26:21–27:9, 56:10–14.) This automatic population of the "Phone opt-in" database field is not done by a sales associate, but rather is done through a remote process separate from any interaction between the sales associate and the

3

customer. (Ex. B at 26:21–27:9.)

8. As reflected by a record in the Customer Maintenance database, Plaintiff Zeidel went to Defendant YM's Illinois MANDEE store prior to June of 2013 and provided a sales associate with at least the following cellphone number: (312) 259-xxxx.

RESPONSE: Undisputed.

9. At least Plaintiff Zeidel's cellphone number was entered by the MANDEE sales associate into the Customer Maintenance database.

RESPONSE: Undisputed.

10. After a customer's cellphone number is first entered in the Customer Maintenance database, the first text the customer receives from MANDEE is the following "welcome message": "Welcome to VIP status! Your gift: 20% OFF ur purch. Exclusive offers 2 come. Cannot combine RC 427 Expires in 30 days. www.Mandee.com Rply STOP to stop."

RESPONSE: Undisputed.

11. On June 5, 2013, after both having given her cellphone number to a MANDEE sales associate and, consequently, having a record created for her in the Customer Maintenance database, Plaintiff Zeidel received the foregoing "welcome message" via her cell phone number, (312) 259-xxxx.

RESPONSE: Plaintiff does not dispute that she received Defendant's "welcome message" on her cell phone after having provided her cellphone number to a MANDEE Sales associate. However, Plaintiff disputes that the text message received on June 5, 2013 was received immediately after having a record created for her in Defendant's Customer Maintenance database, as the Customer Maintenance Database record for Ms. Zeidel lists a "Created" date of December 23, 2012. (Ex. B at 34:25–35:9.)

12. In response to that text "welcome message," Plaintiff Zeidel sent a "STOP" text message on June 5, 2013.

RESPONSE: Undisputed.

13. In compliance with Plaintiff Zeidel's wishes as manifested by the "STOP" message sent on June 5, 2013, no further texts were sent by YM to Plaintiff Zeidel.

RESPONSE: Plaintiff does not dispute that no further texts were sent by YM to Plaintiff Zeidel following the "STOP" message sent on June 5, 2013, but Plaintiff disputes that the evidence submitted by Defendant in support of Paragraph 13 actually supports the proposition that no further texts were sent by YM to Plaintiff Zeidel after the "STOP" message was sent on June 5, 2013, as Paragraph 1 of the Declaration of Jan Harvey only relates to her background and qualifications and says nothing about text messages sent by YM.

14. In its 2012 Report and Order, the FCC promulgated amendments to its regulations implementing the TCPA. *Inter alia*, those amendments included a revised definition of "prior express consent" requiring telemarketers to obtain the express *written* consent of the

5

called party before making automated calls. Those amendments went into effect on October 16, 2013, after the date of the text "welcome message" sent to Plaintiff Zeidel.

RESPONSE: Plaintiff does not dispute that the FCC issued a ruling in 2012 requiring express written consent for telemarketing, nor does Plaintiff dispute that the FCC's 2012 ruling went into effect on October 16, 2013. However, Plaintiff disputes that the FCC's ruling with respect to express *written* consent is relevant to this litigation, as, prior to October 16, 2013, a telemarketer was still required to obtain prior express consent before sending text messages.

## PLAINTIFF'S STATEMENT OF ADDITIONAL UNDISPUTED FACTS REQUIRING DENIAL OF SUMMARY JUDGMENT

Plaintiff Frieda Zeidel, by her undersigned counsel, hereby submits her Statement of Additional Facts Requiring Denial of Summary Judgment. All exhibits referenced herein are the same exhibits as listed in the above index.

1. Plaintiff Zeidel provided her cell phone number to the Mandee sales associate as part of the checkout process when she was asked for her information so that Defendant could have it on file the next time she came to the store. (Ex. C at 25:14–26:3, 28:6–9.)

2. Plaintiff Zeidel would not have given the Mandee employee her cell phone number during her visit to the Mandee store in or around late May/early June 2013 if she had been told that she would receive text messages from Mandee. (Ex. C at 25:12–13.)

3. Plaintiff did not want to receive any text messages from Defendant, immediately requested that Defendant cease sending text messages to her, and does not voluntarily elect to receive any text messages from any retailers. (Ex. C at 20:15–17; Def. R. 56.1 Statement, Dkt. 32, ¶ 12.)

4. Plaintiff Zeidel did not visit any Mandee store after her visit in or about late May/early June 2013 that resulted in the June 5, 2013 text message at issue. (Ex. C at 13:4–9.)

5. From December 2012, through June 2013, Defendant maintained its Customer Maintenance database for the purpose of sending out advertising material through e-mails and/or text messages to customers who provided their information. (Ex. D at 20:19–21:3, 48:5–13, 51:11–21; Ex. B at 19:23–20:7.)

6. The customer information that is eventually collected in the Customer Maintenance database is originally obtained either through customer interactions with store employees at a point of sale register, or through online inquiries initiated by customers. (Ex. D at 27:4–23; Ex. B at 20:16–21.)

7. Beginning sometime in May 2012, and up until sometime around the summer of 2014, Jan Harvey was the Director of Marketing for Mandee, including marketing conducted via text messaging. (Ex. D at 13:4–9, 13:23–14:6, 15:23–16:6, 52:8–10; Ex. E at ¶ 1.)

8. In her role as Director of Marketing, Ms. Harvey has personal knowledge of the procedures and practices in place for telemarketing to customers of YM's Mandee stores. (Ex. E at ¶ 3.)

9. In her role as Director of Marketing for YM's Mandee stores, Ms. Harvey trained district managers, who in turn trained store managers who oversaw the sales associates at each Mandee location. (Ex. D at 24:16–25:5.)

10. Beginning in early 2013, Ms. Harvey became responsible for managing the marketing communications sent to individual Mandee stores. (Ex. D at 25:24–26:13.)

11. During her time as the Director of Marketing for YM's Mandee stores, Ms. Harvey never sent out any training communications related to the Customer Maintenance

7

database and was not aware of, and never accessed, utilized, or created any written policies regarding the gathering of customer information or the inputting of such information into the Customer Maintenance database. (Ex. D at 22:10–23, 26:9–16, 50:23–51:4.)

12. Jessica Ramos is the store manager for Mandee store number 1135, the store that Plaintiff visited prior to receiving the text message at issue in this case. Ms. Ramos has been the store manager at store number 1135 for approximately 8 years. (Ex. A at 8:23–9:5.)

13. Ms. Ramos is responsible for training all of the employees of store number 1135 in all areas of operations including the input of customer information at the point of sale register. (Ex. A at 13:13–19, 19:15–19:21.)

14. There are no written instructions or manuals that deal with the intake of customer information at the point of sale register. (Ex. A at 21:22–22:1, 44:16–19.)

15. The employees of store number 1135 received training only once about how to input customer information. (Ex. A at 19:15–20:4.)

16. During the relevant time period surrounding June 2013, employees operating the cash register had to enter all customer information that was meant to be uploaded into the Customer Maintenance database through a "Customer Information" screen on their computerized point of sale register. (Ex. A at 25:2–26:5, 38:2–10; Ex. D at 9:10–22; Ex. B at 24:15–23.)

17. The "Customer Information" screen utilized by Mandee employees to take down customer information had fields for various customer contact information, including "Street Address," "E-mail," and "Mobile Number." (Ex. F.)

18. During the relevant time period surrounding June 2013, when employees entered customer information into the Customer Information screen they did not see any prompts or messages that directed how they should ask for customer information or provided any guidance

8

regarding obtaining consent from customers to send them advertising materials prior to collecting any contact information. Prior to entering any customer contact information into the Customer Information screen, including customer telephone numbers, employees did not have to acknowledge via a "pop up" box, dialogue box, or any other confirmation method, that they asked the customer whether they would like to receive promotional messages through the contact information provided. (Ex. A at 29:16–19, 34:5–9, 42:13–16.)

19. Ms. Ramos is the only store manager for Mandee store number 1135. Ms. Ramos is not present in the store at all times when it is open for business. (Ex. A at 10:7–12, 10:16.)

20. The store manager did not supervise each sales transaction at YM's Mandee store number 1135. (Ex. A at 22:14–20).

21. What Mandee sales associates ask a customer in order to obtain his/her contact information varies, as sales associates could ask a customer for his/her information in any way that they saw fit when entering information into the Customer Information screen, including asking for a phone number without even mentioning text messages. (Ex. A at 35:22–36:13, 41:18–22, 42:17–19, 43:1–4, 44:13–19.)

22. Mandee store employees do not have direct access to the Customer Maintenance database and any information entered through the Customer Information screen at check-out is later automatically uploaded into the Customer Maintenance database. (Ex. A 14:21–15:10; Ex. B at 21:19–22:18, 24:15–23.)

23. The entry within the "Phone opt-in" field within the "Address" tab of the Customer Maintenance database determines whether a customer will be contacted via the provided phone number. Only customer entries with a "Yes" next to the "Phone opt-in" are sent text messages by Mandee. (Ex. B at 26:5–10; Ex. D at 51:11–16, 55:20–56:2.)

24. The "Phone opt-in" drop down menu within the "Address" tab of the Customer Maintenance database contains only two options, "Yes" and "No". (Ex. B at 26:7–13.)

25. Once a phone number is inputted into the Customer Maintenance database, the "Phone opt-in" drop down menu automatically defaults to "Yes," and text messages automatically begin to be sent to that number without regard to how or why the phone number was inputted into the database. (Ex. B at 26:21–27:9, 56:10–14.)

26. According to Kim Berliner, YM's Manager of Information Technology, the "Phone opt-in date" field in the "Address" tab of the Customer Maintenance database shows the last date when the customer's record pertaining to his/her consent to receive text messages was updated. When a customer's "Phone opt-in" information is changed, the "Phone opt-in date" will automatically change to reflect the date that the change occurred. (Ex. B at 52:15–23, 58:16–17.)

27. The entry for Plaintiff Frieda Zeidel in Defendant's Customer Maintenance database under the "Address" tab shows a "Membership date" of May 28, 2013, the "Created" date is listed as December 23, 2012, the "Last update" date is listed as June 4, 2013, the "Phone opt-in date" is listed as June 5, 2013, and the "From" field and "Modified" field both show a date of July 12, 2013. The "Store no." field shows an entry of "1135," the "Mail opt-in" field shows an entry of "yes," the "Street Address" field shows an entry of "4641 N Ozanam Ave," the "City" field shows an entry of "Norridge," the "Phone" field shows a phone number of "312259xxxx." (Ex. G.)

28. The entry for Plaintiff Frieda Zeidel in Defendant's Customer Maintenance database under the "Transactions" tab shows one transaction that is listed as "Trans No. 4061525" that occurred on October 14, 2013 at "Store no 1101." There are no other transactions

listed under the "Transactions" tab, including no mention of any transactions occurring on December 23, 2012, May 28, 2013, June 5, 2013, or July 12, 2013. (Ex. H.)

29. The entry for Plaintiff Frieda Zeidel in Defendant's Customer Maintenance database under the "Lifetime" tab shows one transaction that occurred on October 14, 2013, involving a sale totaling "70.95" at "Store 1101." There are no other transactions listed under the "Lifetime" tab, including no mention of any purchases occurring on December 23, 2012, May 28, 2013, June 5, 2013, or July 12, 2013. (Ex. I.)

30. From December 2012, through June 2013, Mandee store employees were not instructed or trained by Mandee's Director of Marketing to ask customers for their mailing address, nor did Mandee send advertisements via postal mail. (Ex. D at 48:5–48:13.)

31. Employees of Mandee store number 1135 were instructed by their store manager to ask for customers' mailing address information. (Ex. A at 29:4–12, 39:15–22, 41:13–17.)

32. Store employees had the ability to edit customer information after a transaction was complete and the customer was no longer present. (Ex. A at 24:23–25:1; Ex. B at 24:24–25:13, 54:17–24.)

33. The "From" field in the "Address" tab of the Customer Maintenance database should reflect the date that the customer's mailing address was first entered. (Ex. B at 28:24–29:2.)

34. The "Created" field in the "Address" tab of the Customer Maintenance database should show the date when the customer's information was first entered into the database. (Ex. B at 34:25–35:21.)

35. The "Created" field in the "Address" tab of the Customer Maintenance database should show the same date as the "From" field. (Ex. B at 57:14–15.)

11

36. The "Last update" field in the "Address" tab of the Customer Maintenance database should show the date the mailing address was last updated. (Ex. B at 36:16–37:4.)

37. Mandee does not currently send any marketing text messages to its customers. (Ex. D at 34:5–9, 40:24–41:3, 48:16–25.)

Dated: February 9, 2015  Respectfully submitted,

FRIEDA ZEIDEL, individually and on behalf of a class of similarly situated individuals

By: /s/ Eugene Y. Turin
 One of Plaintiff's Attorneys

Myles McGuire
Evan M. Meyers
Eugene Y. Turin
McGUIRE LAW, P.C.
161 N. Clark St., 47th Fl.
Chicago, IL 60601
Tel: (312) 216-5179
mmcguire@mcgpc.com
emeyers@mcgpc.com
eturin@mcgpc.com

**CERTIFICATE OF SERVICE**

      I, Eugene Y. Turin, hereby certify that on February 9, 2015, I electronically filed the foregoing *Plaintiff's Response to Defendant's Proposed Statement of Undisputed Material Facts In Support of Defendant's Motion for Summary Judgment and Plaintiff's Statement of Additional Facts Requiring Denial of Summary Judgment* with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to the following counsel of record:

Hal R. Morris
Elizabeth A. Thompson
ARNSTEIN & LEHR LLP
120 South Riverside Plaza
Chicago, IL 60606
hrmorris@arnstein.com
eathompson@arnstein.com

Christopher A. Mitchell
Dickinson Wright, PLLC
350 S. Main Street
Suite 300
Ann Arbor, MI 48104
cmitchell@dickinsonwright.com

                                                  /s/ Eugene Y. Turin