IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRIEDA ZEIDEL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 13-cv-6989 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| YM LLC USA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Frieda Zeidel alleges that Defendant YM LLC violated the Telephone Consumer Protection Act by sending her an advertisement via text message without her prior express consent. Before the Court is Defendant's motion for summary judgment [31]. For the reasons set forth herein, Defendant's motion is denied.

**I. Background**

The Court takes the relevant facts from the parties' Local Rule 56.1 statements, construing the facts in the light most favorable to the nonmoving party (here, Plaintiff).[1]

**A. Undisputed Facts**

Defendant YM LLC USA owns and operates several retail clothing stores in the United States, including the MANDEE brand clothing store. There is only one MANDEE store in Illinois, located in the Norridge Commons Shopping Center in the Village of Norridge (just a few miles northwest of Chicago). Plaintiff lives in Norridge, about a mile-and-a-half away from

---

[1] Local Rule 56.1 requires a party moving for summary judgment to submit a statement of material facts as to which the movant contends there is no genuine issue and entitles the movant to judgment as a matter of law. The rule permits a movant to file up to 80 separately-numbered statements of undisputed facts. L.R. 56.1(a)(3). The rule also requires the nonmovant to file a concise response to the movant's statement of facts setting forth "any disagreement, specific references to the affidavits, parts of the record, and other supporting materials." L.R. 56.1(b)(3)(A).

the MANDEE store. In May of 2013, while shopping at the MANDEE store, Plaintiff provided a sales associate with her cell phone number. On June 5, 2013, Plaintiff received the following text message on her cell phone:

> Welcome to VIP status! Your gift: 20% OFF ur purch. Exclusive offers 2 come. Cannot combine RC 427 Expires in 30 days. www.Mandee.com Rply STOP to stop.

The text message came from Defendant, via a texting service called Mozeo LLC. Plaintiff replied "STOP" to the message, and Defendant stopped texting Plaintiff.

Defendant sent this text message to certain customers listed in its Customer Maintenance database. Defendant's Customer Maintenance database consists of information voluntarily provided to Defendant by MANDEE customers, either through its website or—as was the case with Plaintiff—in person at one of its retail stores.

**B. Prior Express Consent**

The main factual dispute here pertains to the interaction between Plaintiff and the MANDEE sales associate on the day that Plaintiff provided her cell phone number. There is no recording of that conversation, and each party has its own story as to what was said. Defendant alleges that its sales associates are trained to ask customers if they want to receive text messages *before* asking for a customer's phone number, such that it would be impossible for MANDEE to have Plaintiff's phone number without Plaintiff consenting to receive text messages. In support of this argument, MANDEE's Director of Marketing, Jan Harvey, provided a declaration claiming that "the only way Plaintiff Zeidel's cell phone number would end up in the Customer Maintenance database record * * * would be if she voluntarily provided it to a sales associate at a MANDEE store * * * in response to a specific query as to whether she wanted to receive texts from MANDEE." [Harvey Decl., 32-1, ¶ 10.] Similarly, Jessica Ramos, who has managed the MANDEE store in question for the past eight years, provided a declaration stating that sales

2

associates in her store "are trained to ask customers whether they would like to receive text messages which would provide the customers with discount offers and notice of new merchandise arrivals," and that "[i]f the customer answers 'yes,' the sales associates are further trained to solicit from the customer at least their cell phone number." [Ramos Decl., 32-3, ¶ 4.] In her deposition, Ms. Ramos testified that she trains everyone in the store personally, and that in her eight years as manager she is not aware of any instances where an employee took a customer's phone number without first asking the customer if they wanted to receive coupons or marketing messages. [Ramos Dep., 52-1, at 5.] Accordingly, Ms. Ramos concluded that "the only way Plaintiff Zeidel's cellphone number would end up in the Customer Maintenance database record * * * would be if she voluntarily provided it to a sales associate * * * in response to a specific query as to whether she would like to receive texts from MANDEE." [Ramos Decl., ¶ 5.]

Not surprisingly, Plaintiff disagrees with this characterization. Plaintiff's primary argument is that Ms. Ramos (the store manager) testified that there is no script that prompts the sales associates on what to ask the customers while requesting personal information (such as cell phone numbers), and that it is possible that a sales associate could ask a customer for his or her phone number without first gaining the customer's acknowledgment that in doing so the customer is authorizing MANDEE to send the customer text messages. [Ramos Dep., 50-1, at 10–13.] In her own deposition, Plaintiff admits that she provided her cell phone number to the sales associate, but claims that she did so only "[b]ecause they asked for it," and that she is "not really sure" why they asked for her number, "[b]ut if anybody had told [her] that it was for a text, then [she] wouldn't have given [her] cell phone [number] out." [Zeidel Dep., 52-3, at 8.]

## II.  Legal Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also *Sallenger v. City of Springfield, Ill.*, 630 F. 3d 499, 503 (7th Cir. 2010) (citing Fed. R. Civ. P. 56(c)(2) and noting that summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law"). In determining whether summary judgment is appropriate, the court should construe all facts and reasonable inferences in the light most favorable to the non-moving party. See *Carter v. City of Milwaukee*, 743 F. 3d 540, 543 (7th Cir. 2014). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Put another way, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

To avoid summary judgment, the opposing party then must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to accept its version of events." See *Koszola v. Bd. of Educ. of City of Chi.*, 385 F. 3d 1104, 1111 (7th Cir. 2004). In other words, the "mere existence of a scintilla of evidence in support of the

4

[non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**III.    Analysis**

Plaintiff alleges that Defendant violated the Telephone Consumer Protection Act ("TCPA") by sending her an advertisement via text message without her prior consent. Under the TCPA, it is unlawful "to make any call[2] (other than a call made for emergency purposes *or made with the prior express consent* of the called party) using any automatic telephone dialing system * * * to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). Defendant counters by alleging that Plaintiff *did* consent to receiving advertisements via text message because the MANDEE sales representative would not have taken Plaintiff's phone number without first obtaining that consent. Consent is an affirmative defense, and thus Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending her the text message. See, *e.g.*, *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014).

The TCPA does not define what constitutes "prior express consent." Thanks to a recent FCC regulation,[3] as of October 16, 2013, in order to obtain "prior express consent," a telemarketer must obtain *written* consent from the recipient agreeing to receive automated messages. But in June of 2013 (*i.e.*, when Defendant texted Plaintiff), written consent was not expressly required. Instead, providing one's telephone number could, under certain

---

[2] The statute applies equally to text messages. See, *e.g.*, *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1009 (N.D. Ill. 2010) ("[T]he Court agrees with the FCC's interpretation that § 227 of the TCPA applies to text messages.").

[3] The FCC has the authority to promulgate rules and regulations to implement the TCPA per 47 U.S.C. § 227(b)(2).

5

circumstances, create express consent to be contacted by a telemarketer. See, *e.g.*, *Frausto v. IC Sys., Inc.*, 2011 WL 3704249, at *2 (N.D. Ill. Aug. 22, 2011) (holding that an electronic payment service's disclosure that an applicant's phone number could be used to collect fees translated as an applicant's consent to receive debt-collection calls from third-party debt collectors).

One important caveat is that consent is limited in scope to the purpose for which it was originally granted. See, *e.g.*, *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *4–5 (N.D. Ill. Dec. 1, 2014) (holding that providing a phone number "for questions about [an] order" did not constitute consent to receive phone call advertisements); *Kolinek v. Walgreen Co.*, 2014 WL 3056813, at *3 (N.D. Ill. July 7, 2014) (holding that plaintiff provided his phone number for identification purposes only and did not consent to receive phone calls, and that "turning over one's wireless number for the purpose of joining one particular private messaging group did not amount to consent for communications relating to something other than that particular group"); *Thrasher-Lyon v. CCS Commercial*, 2012 WL 3835089, at *5 (N.D. Ill. Sept. 4, 2012) (distinguishing express consent from implied consent, noting that "[o]ne 'expresses' consent by, well, expressing it: stating that the other party can call" for a particular reason).

The takeaway is that simply providing one's phone number does not constitute *carte blanche* consent to receive automated marketing messages of any kind; instead, consent is limited by the facts surrounding the consent, including the terms of the telemarketer's sales pitch. Here, because the conversation between Plaintiff and the MANDEE sales representative was not preserved or otherwise commemorated, the Court is left guessing as to the scope of Plaintiff's consent. Perhaps Defendant is correct that the sales representative acted in accordance with her training in obtaining Plaintiff's verbal consent to receive advertisements via text message before taking down her phone number. Defendant presents very compelling evidence to this end,

including the testimony of the store manager who claims that in eight years she has never seen an employee take a customer's number without first obtaining the customer's consent to receive coupons and advertisements. But as Ms. Ramos (the MANDEE store manager) was forced to admit in her deposition, there is no script that prompts the sales associates on what to ask the customers while requesting personal information, and it is possible that a sales associate could ask a customer for his or her phone number without first gaining the customer's acknowledgment that in doing so the customer is authorizing MANDEE to send the customer text messages. [Ramos Dep., 50-1, at 10–13.] And Plaintiff testified that while she had no specific recollection of her conversation with the sales representative or why she decided to provide her phone number, she claimed that "if anybody had told [her] that it was for a text, then [she] wouldn't have given [her] cell phone [number] out." [Zeidel Dep., 52-3, at 8.] Thus, while a significant percentage of MANDEE customers likely provided consent to receive such messages before offering their phone numbers, there is simply no definitive evidence indicating whether Plaintiff provided such consent.

In short, if Plaintiff provided her phone number after being told that doing so would result in her receiving text messages from MANDEE, then Defendant did not violate the TCPA. But if the MANDEE sales representative abandoned her training and simply requested Plaintiff's phone number without explaining that doing so meant that Plaintiff would receive automated text messages, then Defendant did violate the TCPA. Defendant bears the burden of proving consent, and because this fact is in dispute, the Court cannot resolve this issue on summary judgment; its resolution will be left to the trier of fact.

As a coda to this analysis, the Court notes that Plaintiff—whose complaint is fashioned as a class action—has yet to move for class certification (technically, Plaintiff withdrew her class

certification motion without prejudice in June of 2014 [28, 29] and has yet to refile). See, *e.g.*, *Wiesmueller v. Kosobucki*, 513 F.3d 784, 787 (7th Cir. 2008) (explaining that in certain instances a district court can address the merits of the case on a motion for summary judgment without first ruling on the plaintiff's motion to certify a class). Now that Plaintiff has survived summary judgment, the parties' attention will no doubt shift back to the class issues, such as whether Plaintiff is suited to represent the purported "thousands of members of the Class." [14, ¶ 21.] Without prejudging any such issues, the Court alerts the parties to the "split of opinion in TCPA cases on whether issues of individualized consent predominate over common questions of law or fact so as to prevent class certification." *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 106 (N.D. Ill. 2013) (citing cases). "The rule that can be extracted from these cases is that issues of individualized consent predominate when a defendant sets forth specific evidence showing that a significant percentage of the putative class consented to receiving [texts] on their cellphone[s]." *Id.* at 106–07.

**IV. Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment [31] is denied.

Dated: April 27, 2015

_____
Robert M. Dow, Jr.
United States District Judge