**THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| FRIEDA ZEIDEL and CARLA SERRANO, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| *Plaintiff*, | ) ) | No. 13-cv-06989 |
| v. | ) ) | Hon. Robert M. Dow, Jr. |
| YM LLC USA, | ) ) | |
| *Defendant*. | ) | |

**PLAINTIFF'S RENEWED MOTION AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF CLASS CERTIFICATION**

Plaintiff Carla Serrano ("Plaintiff"), through her undersigned counsel, pursuant to Rule 23 of the Federal Rules of Civil Procedure, hereby moves this Honorable Court for entry of an Order certifying the below-proposed Class, appointing Plaintiff Serrano as Class Representative, and appointing Plaintiff's attorneys as Class Counsel. In support of her Motion, Plaintiff submits the following Memorandum of Law.

Dated:  April 12, 2016

Respectfully submitted,

CARLA SERRANO, individually and on behalf of a class of similarly situated individuals

By: /s/ Eugene Y. Turin
       One of Her Attorneys

Evan M. Meyers
Eugene Y. Turin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
emeyers@mcgpc.com
eturin@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*

i

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................1

II.  FACTUAL BACKGROUND ..............................................................................2

    A.   Defendant's practice of sending text message advertisements to individuals who did not provide written consent ................................................2

    B.   Other Mandee customers who received Defendant's text message advertisements can be identified and excluded from the Class ........................5

    C.   Defendant's text message advertisements were sent utilizing the same technology and through the same third-party service provider .......................6

    D.   The putative Class ........................................................................................7

    E.   Plaintiff Serrano received an automated "welcome" text message advertisement without providing prior express written consent to Defendant ................................................................................8

III. ARGUMENT ......................................................................................................9

    A.   The TCPA .....................................................................................................9

    B.   Standards for Class Certification ...............................................................11

    C.   The proposed Class satisfies Rule 23(a) prerequisites .............................11

        1.   The requirement of numerosity is satisfied .....................................11

        2.   The proposed Class is ascertainable ...............................................12

        3.   The requirement of commonality is satisfied...................................14

            i.    *The use of an ATDS*............................................................15

            ii.   *The existence of valid consent*...........................................16

            iii.  *Defendant's liability under the TCPA*.................................16

            iv.   *Damages* ..............................................................................17

        4.   Plaintiff's claim is typical of those of the other Class members................17

        5.   Plaintiff and Proposed Class counsel will adequately represent the Class ................................................................................18

D.    The proposed Class also satisfies Rule 23(b)(3) standards.............................20

    1.    Common questions of law and fact predominate.......................................21

    2.    A class action is a superior method for adjudicating this controversy.................................................................................................23

E.    The Court should appoint Plaintiff's counsel as Class Counsel .....................25

IV.    CONCLUSION ..........................................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

**United States Supreme Court Cases:**

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................21

*Campbell-Ewald Co. v. Gomez*,
  136 S. Ct. 663 (2016)............................................................10

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  131 S.Ct. 2179 (2011)...........................................................21

*Mims v. Arrow Financial Services*,
  132 S.Ct. 740 (2012)...............................................................9

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S.Ct. 2541 (2011)...........................................................17

**United States Circuit Court of Appeals Cases:**

*CE Design Ltd. v. Prism Bus. Media, Inc.*,
  606 F.3d 443 (7th Cir. 2010) ...............................................10

*De La Fuente v. Stokely-Van Camp, Inc.*,
  713 F.2d 225 (7th Cir. 1983) ...............................................18

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .............................................20

*In re Motorola Securities Litig.*,
  644 F.3d 511 (7th Cir. 2011) .................................................2

*In re Nassau County Strip Search Cases*,
  461 F.3d 219 (2d Cir. 2006)..................................................21

*Keele v. Wexler*,
  149 F.3d 589 (7th Cir. 1998) ...............................................15

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. 2012) ..........................................20, 21

*Mullins v. Direct Digital, LLC*,
  795 F.3d 654 (7th Cir. 2015) ...............................................14

*Murray v. GMAC Mortg. Corp.*,
　　434 F.3d 948 (7th Cir. 2006) ..................................................................23

*Pastor v. State Farm Mut. Auto Ins. Co.*,
　　487 F.3d 1042 (7th Cir. 2007) ................................................................23

*Rosario v. Livaditis*,
　　963 F.2d 1013 (7th Cir. 1992) ................................................................15

*Spano v. The Boeing Co.*,
　　633 F.3d 574 (7th Cir. 2011) ..................................................................11

*Suchanek v. Sturm Foods, Inc.*,
　　764 F.3d 750 (7th Cir. 2014) ..................................................................11

**United States District Court Cases:**

*Abbas v. Selling Source, LLC*,
　　No. 09-cv-3413, 2009 WL 4884471 (N.D. Ill. 2009) ...............................9

*Agne v. Papa John's Int'l, Inc.*,
　　286 F.R.D. 559 (W.D. Wash. 2012) .......................................................11

*Arenson v. Whitehall Convalescent & Nursing Home, Inc.*,
　　164 F.R.D. 659 (N.D. Ill. 1996) .............................................................18

*Birchmeier v. Caribbean Cruise Line, Inc.*,
　　302 F.R.D. 240 (N.D. Ill. 2014)............................................1, 11, 13, 14, 21, 24

*Boundas v. Abercrombie & Fitch Stores, Inc.*,
　　280 F.R.D. 408 (N.D. Ill. 2012)........................................................13, 14

*Chapman v. Wagener Equities, Inc.*,
　　No. 09-cv-07299, 2014 WL 540250 (N.D. Ill. 2014)...........15, 17, 18, 23

*CE Design Ltd. v. Beaty Const., Inc.*,
　　No. 07-cv-3340, 2009 WL 192481 (N.D. Ill. 2009) ...............................18

*CE Design Ltd. v. Cy's Crabhouse North, Inc.*,
　　259 F.R.D 135 (N.D. Ill. 2009).........................................................14, 17

*Gammon v. G.C. Services Limited Partnership*,
　　162 F.R.D. 313 (N.D. Ill. 1995).............................................................19

*Gehrich v. Chase Bank USA, N.A.*,
　　No. 12-cv-5510, 2016 WL 806549 (N.D. Ill. 2016) ...............................18

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
No. 07-cv-5953, 2009 WL 2581324 (N.D. Ill. 2009) .............................................................. 14

*Green v. Serv. Master On Location Servs. Corp.*,
No. 07-cv-4705, 2009 WL 1810769 (N.D. Ill. 2009) .............................................................. 24

*Griffith v. Consumer Portfolio Serv., Inc.*,
838 F. Supp. 2d 723 (N.D. Ill. 2011) ..................................................................................... 10

*Heastie v. Community Bank of Greater Peoria*,
125 F.R.D. 669 (N.D. Ill. 1989) ............................................................................................. 12

*Herkert v. MRC Receivables Corp.*,
254 F.R.D. 344 (N.D. Ill. 2008) ............................................................................................. 22

*Hinman v. M&M Rental Ctr.*,
545 F.Supp.2d 802 (N.D. Ill. 2008) .......................................................................... 1, 17, 25

*Johnson v. Yahoo!, Inc.*,
No. 14-cv-2028, 2016 WL 25711 (N.D. Ill. 2016) ...................................................... 19, 21, 22

*Kavu, Inc. v. Omnipak Corp.*,
246 F.R.D. 642 (W.D. Wash. 2007) ....................................................................................... 25

*Kramer et al v. Autobytel et al.*,
No. 10-cv-02722 (N.D. Cal. 2011) ......................................................................................... 20

*Lee v. Stonebridge Life Ins. Co.*,
289 F.R.D. 292 (N.D. Cal. 2013) ....................................................................................... 1, 11

*Lozano v. Twentieth Century Fox*,
No. 09-cv-6344 (N.D. Ill. 2011) ............................................................................................. 20

*Miller v. Wexler & Wexler*,
No. 97-cv-6593, 1998 WL 60798 (N.D. Ill. 1998) ................................................................. 12

*Mitchem v. Illinois Collection Service*,
271 F.R.D. 617 (N.D. Ill. 2011) ......................................................................................... 1, 12

*Murray et al. v. Bill Me Later, Inc.*,
No. 12-cv-04789 (N.D. Ill. 2014) ........................................................................................... 20

*Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*,
No. 08-cv-5959, 2010 WL 4931001 (N.D. Ill. 2010) ....................................................... 21, 25

*Robles v. Corp. Receivables, Inc.*,
220 F.R.D. 306 (N.D. Ill. 2004) ....................................................................................... 19, 20

*Rojas et al v. Career Education Co.*,
No. 10-cv-05260 (N.D. Ill. 2012) ........................................................................... 20

*Ruiz v. Stewart Associates, Inc.*,
171 F.R.D. 238 (N.D. Ill. 1997) ............................................................................... 23

*Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs., LLC*,
No. 12-cv-3671, 2012 WL 6106714 (N.D. Ill. 2012) ......................................... 21, 25

*Scholes v. Stone, McGuire, & Benjamin*,
143 F.R.D. 181 (N.D. Ill. 1992) ............................................................................... 15

*Smith v. Nike Retail Servs., Inc.*,
234 F.R.D. 648 (N.D. Ill. 2006) ............................................................................... 12

*Targin Sign Sys., Inc. v. Preferred Chiropractic Ctr., Ltd.*,
679 F.Supp.2d 894 (N.D. Ill. 2010) ......................................................................... 17

## Statutes and Court Rules:

Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* .................................*passim*

Fed. R. Civ. P. 23 ..............................................................................................*passim*

47 C.F.R. § 64.1200 ...........................................................................................*passim*

## Miscellaneous:

7A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1760, at 121 (2d ed. 1987) ....................................................................................................... 12, 20

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Report and Order, CG Docket No. 02-278*, 18 FCC Rcd. 14014 (July 3, 2003) .......... 10

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Report and Order, CG Docket No. 02-278*, 27 FCC Rcd. 1830 (Feb. 15, 2012) .......... 10

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Declaratory Ruling, CG Dkt. No. 02-278*, 30 FCC Rcd. 7961 (July 10, 2015) ............ 10

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S<br><u>RENEWED MOTION FOR CLASS CERTIFICATION</u>

## I.   INTRODUCTION

In an effort to promote its retail apparel products, Defendant YM LLC USA (n/k/a A&M (2015) LLC), an operator of "Mandee" women's apparel retail stores across the country, transmitted thousands of automated text message advertisements *en masse* to the cell phones of consumers throughout the nation. Each of these text messages was sent without the prior express written consent of the called party to receive such messages in violation of the Telephone Consumer Protection Act ("TCPA"). 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2). Each message contained an advertisement promoting Defendant's Mandee retail stores, and each was sent by the same entity using the same autodialing technology.

This type of claim, where a defendant engages in an identical course of conduct against a large number of consumers who suffered identical, but statutorily limited harm, is ideally suited for aggregation under Rule 23, and numerous courts have certified similar TCPA class actions under Rule 23(b)(3). *See e.g. Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 256 (N.D. Ill. 2014); *Lee v. Stonebridge Life Ins. Co.*, 289 F.R.D. 292, 295 (N.D. Cal. 2013); *Mitchem v. Illinois Collection Service*, 271 F.R.D. 617, 620 (N.D. Ill. 2011); *Hinman v. M&M Rental Ctr.*, 545 F.Supp.2d 802, 808 (N.D. Ill. 2008). In this case, Defendant's uniform policy and practice of sending text message advertisements to individuals who did not provide prior express written consent creates common questions that predominate over any individual issues pertaining to Defendant's liability to the Class members and are easily resolved across the entire Class in a single stroke using common proof. In addition, a class action is superior to any other method for addressing Defendant's systematic TCPA violations, as the alternatives to a class

1

action are equally unpalatable: either few, if any, putative class members would pursue their claims due to the high cost and minimal monetary incentive to file suit individually, or else class members would bring numerous duplicative lawsuits that would waste court resources.

Accordingly, because all of the requirements for establishment of a class action are met here, Plaintiff Serrano moves this Court to certify the following class of individuals who received automated text message advertisements from Defendant: All persons in the United States and its Territories who were sent the text message:

> Welcome to VIP status! Your gift: 20% OFF ur purch. Exclusive offers 2 come. Cannot combine RC 427 Expires in 30 days. www.Mandee.com Rply STOP to stop
> or
> Welcome to VIP status! Your gift: 20% OFF ur purch. Exclusive offers 2 come. Cannot combine RC 2028 Expires in 30 days. www.Mandee.com Rply STOP to stop
> or
> Welcome to VIP status! UR Gift - 20% OFF!! Xclusive offers 2 come! Rstr Apply. Valid 30 Days. RC 2028 http://on.fb.me/1tB17h Rply STOP to stop

on their cellular telephones from the shortcode 24587 after October 16, 2013 without providing prior express written consent to receive such messages.[1]

## II.    FACTUAL BACKGROUND

### A.    Defendant's practice of sending text message advertisements to individuals who did not provide written consent

Defendant operates a chain of women's retail clothing stores, including stores under the

---

[1] In light of this Court's ruling on Plaintiff's Motion for Leave to File Second Amended Class Action Complaint (Dkt. 81), Plaintiff now seeks a proposed Class that is narrower than the one defined in Plaintiff's Second Amended Complaint. This Motion is only seeking certification of a subset of what was previously defined as the "Written Consent Subclass," consisting of individuals who received Defendant's "welcome" text message advertisements after October 16, 2013, when the FCC regulations requiring prior express written consent went into effect. (*See* Dkt. 81 at 2; Dkt. 82 at ¶ 22.) Such modification is appropriate given that Rule 23 allows for modification of orders granting class certification. Fed. R. Civ. P. 23(c)(1)(C); *see also In re Motorola Securities Litig.*, 644 F.3d 511, 518 (7th Cir. 2011). Accordingly, in an effort to best represent the proposed Class and simplify the issues presented to the Court, this Motion is being brought solely on behalf of Plaintiff Serrano, who received an unauthorized text message from Defendant in December 2013, and not on behalf of Plaintiff Zeidel, who received an unauthorized text message from Defendant *prior* to October 16, 2013. (Dkt. 82, at ¶¶ 16, 18.)

"Mandee" brand, throughout the country. (Def's Answer to 2nd Amend. Compl., Dkt. 88, at ¶ 7.) Defendant acquired the Mandee brand in May 2013 as part of an acquisition of assets from Big M, Inc. (Declaration of Jan Harvey in Support of Def's MSJ ("Harvey Decl."), Dkt. 32-1, at ¶ 1.) Prior to Defendant's acquisition of Mandee, Mandee maintained a database of telephone numbers that it used to send text message advertisements. (Transcript of Dec. 18, 2014 Deposition of Jan Harvey, at 54:12–17[2]; Transcript of Dec. 3, 2015 Deposition of Karina Armagno, at 17:18–22[3].) Upon acquiring Mandee in May 2013 Defendant implemented a policy that continued the practice of collecting the cellular phone numbers of customers who visited Mandee retail stores. (Def's Suppl. Response to Plf's Request to Admit, ¶ 7[4]; Harvey Decl., Dkt. 32-1, ¶ 5; Transcript of Dec. 4, 2015 Deposition of Jan Harvey, at 24:8–12, 26:3–11.[5])

Specifically, Defendant had a written policy whereby employees would ask customers for their telephone numbers when customers would check out at the cash register. (Ex. B at 24:25–25:20; Ex. D at 26:3–11, 28:3–8, 58:13–24; Transcript of Jan. 8, 2015 Deposition of Jessica Ramos, at 18:22–19:9, 39:10–14[6]; Mandee Customer Capture Training Policy, attached hereto as Exhibit F.[7]) When the customer would check out at the register, the Mandee sales associate was

---

[2] Excerpts of the December 18, 2014 Deposition of Jan Harvey are attached hereto as Exhibit A. All exhibits herein are authenticated and described in the Declaration of Evan M. Meyers ("Meyers Decl."), attached hereto.

[3] Excerpts of the December 3, 2015 Deposition of Karina Armagno are attached hereto as Exhibit B.

[4] Defendant's Supplemental Responses to Plaintiff Zeidel's Requests for Admissions are attached hereto as Exhibit C.

[5] Excerpts of the December 4, 2015 Deposition of Jan Harvey are attached hereto as Exhibit D.

[6] Excerpts of the January 8, 2015 Deposition of Jessica Ramos are attached hereto as Exhibit E.

[7] Defendant's policy for obtaining customers' consent was produced in hard copy format and, as noted by Defendant's own witness, was difficult to read. (See Ex. D at 24:13–23.) Plaintiff has attached a second page to Exhibit F that is an enlarged true and accurate copy of the relevant portions of the policy.

instructed to inquire orally whether the customer would like to receive promotions and advertisements for Mandee stores. (Ex. A at 34:20–35:11, 35:17–36:16; Ex. D at 26:3–11; Ex. E at 17:12–19:1; Ex. F.) The sales associate would then enter the customer's information into a screen that featured fields for the customer's name, address, cellular telephone number and email address. (Def's 2d Supp. Responses to Plf's First Set of Doc. Requests, at 19[8]; Ex. E at 29:20–30:6.) If the customer orally acknowledged that she wished to receive text messages on her cellular telephone, the sales associate was trained to change the database field labeled "Mobile Opt-In" from "Unknown" to "Yes." (Ex. G at 19; Ex. E at 30:2–31:1; Declaration of Jessica Ramos in Support of Defendant's MSJ, Dkt. 32-3, at ¶ 3; Ex. D at 58:13–24; Ex. F.)

The information entered into the customer information screen was automatically uploaded into Mandee's "customer maintenance database." (Ex. A at 20:15–18; Declaration of Kim Berliner in Support of Defendant's MSJ, Dkt. 32-4, at ¶¶ 3–6; Transcript of Dec. 17, 2014 Deposition of Kim Berliner, at 21:19–22:24[9]; Harvey Decl., Dkt. 32-1, at 10.) The customer maintenance database was used solely for the purpose of sending advertisements to Mandee customers. (Ex. A at 20:19–21:3; Ex. H at 19:18–20:7.) New customer records entered into the database were sent to Mozeo, Inc. ("Mozeo") automatically on a daily basis. (Ex. A at 38:17–39:3; Ex. H at 47:2–48:6.) Mozeo was the vendor hired by Defendant to send the text message advertisements to Mandee's customers. (Ex. A at 32:19–23; Ex. C at ¶¶ 3, 6.) Mozeo contracted with mBlox, Inc. ("mBlox"), a text message aggregator,[10] to transmit the messages to the cell

---

[8] Defendant's Second Supplemental Responses to Plaintiff's First Set of Document Requests is attached hereto as Exhibit G.

[9] Excerpts of the December 17, 2014 Deposition of Kim Berliner are attached hereto as Exhibit H.

[10] *See* mBlox Master Services Agreement, attached hereto as Exhibit I. Aggregators are technology service providers that allow mobile marketing companies such as Mozeo to connect to multiple cellular carriers and actually send and receive text messages to/from consumers. (*See* Declaration of Plaintiff's Expert, Randall A. Snyder, attached hereto as Exhibit J, at ¶¶ 16–17.)

phones of Mandee's customers through the "24587" shortcode[11] that it at all times operated.

New customer records containing a "Yes" in the "Phone opt-in" field were automatically transferred to Mozeo, which then automatically sent a "welcome" text message upon receipt of the information. (Ex. A at 33:15–23, 51:11–16; Harvey Decl., Dkt. 32-1, at ¶ 12; Ex. H at 46:11–25, 47:25–48:6; *See* excerpts of the text message log produced by mBlox, Inc., attached hereto as Exhibit M.) After receiving the initial welcome message, customers would continue to receive other automated text message advertisements from Mandee. (Ex. A at 55:11–56:2; Ex. H at 42:24–44:6; *see* list of Defendant's text message templates, attached hereto as Exhibit N.)

Defendant claims that it stopped sending text message advertisements in or about March 2014, shortly after this lawsuit was commenced. (Ex. D at 13:18–14:9, 16:8–21.) But between May 2013, when Defendant acquired Mandee, and March 2014, when Defendant allegedly stopped sending text message advertisements, Defendant's policy and practice of gathering telephone numbers, obtaining oral consent to send text messages, and actually sending the text messages, remained the same. (Ex. D at 58:4–24; Ex. C at ¶¶ 13, 14–17.) During that time period Mandee's sales associates were never instructed to collect cellular telephone numbers from customers in any written form, there was no policy in place relating to obtaining written consent, and the pattern and practice of obtaining telephone numbers orally was consistent and systematic. (Ex. D at 58:13–24; Ex. F.)

**B.    Other Mandee customers who received Defendant's text message advertisements can be identified and excluded from the Class**

Although the vast majority of customer telephone numbers were collected orally by Mandee sales associates at the point of sale, Defendant also sent text messages to three other

---

[11] *See* Neustar shortcode invoice and renewal documents, attached hereto as Exhibit K and Group Exhibit L (showing that Mozeo was the operator of the 24587 shortcode at all time relevant to this litigation).

groups of Mandee's customers who are not Class members: individuals who filled out a written form in-person at a Mandee store (*see* Mandee text message sign-up forms (redaction in original), attached hereto as <u>Exhibit O</u>); individuals who subscribed to text messages on Mandee's website (Harvey Decl., Dkt. 32-1, ¶ 6, 8; Ex. D at 56:9–15); and individuals who texted a telephone number to Mandee's dedicated shortcode. (Ex. B at 19:13–20, 22:13–23:10.) All members of these groups are ascertainable, and none are members of the Class.

With respect to the first group, Defendant only ever collected a total of 55 text message consent forms containing contact information and written consent to receive text messages from 489 individuals, and all such forms have been produced. (Ex. O.) With respect to the second group, Defendant and/or Mozeo has the ability to determine which phone numbers in the customer maintenance database were inputted as a result of a customer providing it through the Mandee website. (Ex. D at 57:12–22, 63:19–64:4.) With respect to the third group, individuals who sent a text message to Mandee's dedicated shortcode in order to receive future text messages can be identified by records maintained by Defendant, Mozeo, and/or the aggregator, mBlox, Inc. (*See* Ex. J at ¶ 29 (noting that "[m]obile marketing companies typically record and maintain data regarding the text message communications enabled between the branded company and the cellular subscriber for several years"); Ex. D at 33:23–34:22.)[12]

### C. Defendant's text message advertisements were sent utilizing the same technology and through the same third-party service provider

At all relevant times, between October 16, 2013 to the present, Defendant utilized the

---

[12] Testimony from Mandee's Manager of Marketing (Ex. A at 13:4–9) actually suggests that prior to May 2013 – well in advance of the time period relevant to this litigation – Mandee ceased collecting cellular telephone numbers by having customers send a text message to its shortcode. (Ex. D at 28:9–29:19.) This was confirmed by Defendant's counsel, who verified that the promotion related to customers opting in to receive text messages by first sending a text message to Mandee pre-dated the relevant time period, and was in effect only before Defendant's acquisition of Mandee in May 2013. (Meyers Decl. at ¶ 17.)

same third-party service provider – Mozeo – that actually sent the text message advertisements at issue. (Ex. C at ¶ 5; Ex. D at 17:10–24, 18:8–14.) Furthermore, as Plaintiff's expert testified in his expert report, the text message advertisements were sent using the same "automated text message system provided by Mozeo" and "[t]he functionality provided by Mozeo to [Defendant] provides essentially a common functional user experience to all cellular subscribers and has done so as at least as far back as May 2012." (Ex. J at ¶ 42.) In short, "[a]ll text messages sent to Defendant's customers, or using information from Defendant's database were sent from the same provider . . . using the same system and the same short code from at least May 2012 through at least December 2014" and "[t]here do not appear to be any variances in the system that was used to send a text message to any [of Defendant's] customers during that time period." (Ex. J at ¶ 42.) No facts or evidence to the contrary have been produced in this case.

### D. The putative Class

Plaintiff seeks certification of a class of individuals defined as follows: All persons in the United States and its Territories who were sent the text message:

> Welcome to VIP status! Your gift: 20% OFF ur purch. Exclusive offers 2 come. Cannot combine RC 427 Expires in 30 days. www.Mandee.com Rply STOP to stop
> or
> Welcome to VIP status! Your gift: 20% OFF ur purch. Exclusive offers 2 come. Cannot combine RC 2028 Expires in 30 days. www.Mandee.com Rply STOP to stop.
> or
> Welcome to VIP status! UR Gift - 20% OFF!! Xclusive offers 2 come! Rstr Apply. Valid 30 Days. RC 2028 http://on.fb.me/1tB17h Rply STOP to stop

on their cellular telephones from the shortcode 24587 after October 16, 2013 without providing prior express written consent to receive such message. Not included in this Class are all individuals who received a "welcome" text message only after submitting their information on Mandee's website, after filling out in writing Mandee's text message opt-in form, or after

sending a text message to Mandee's dedicated text message shortcode to receive future messages. Accordingly, the proposed Class consists solely of individuals who received the "welcome" text message advertisement as a result of Defendant's uniform practice of collecting its customers' cellular telephone numbers without obtaining prior express written consent as required under the TCPA. (Ex. A at 35:17–36:16; Ex. D at 26:3–11; Ex. F; 47 C.F.R. § 64.1200(a)(2)). Furthermore, all putative Class members received substantively identical text messages from the same shortcode using the same automated telephone dialing system. (Ex. M; Ex. J at ¶ 42.)

In response to a subpoena issued to mBlox, Inc. – the text message aggregator utilized by Mozeo to send the messages – Plaintiff has obtained the call logs for all text messages sent by Mozeo on behalf of Defendant advertising Mandee stores between October 17, 2013 and February 28, 2014. (Meyers Decl. at ¶ 14; Ex. M.) According to the records produced by mBlox, between October 17, 2013 and February 28, 2014 Defendant sent 79,404 "welcome" text message advertisements to 79,404 unique cell phone numbers. (Meyers Decl. at ¶ 14; Ex. M.)[13]

### E. Plaintiff Serrano received an automated "welcome" text message advertisement without providing prior express written consent to Defendant

On December 31, 2013, Plaintiff Serrano received the same "welcome" text message as the putative Class members, from the same text message shortcode, "24587":

---

[13] On April 12, 2016 – Plaintiff's deadline to file this Motion (Dkt. 89) – Defendant's counsel contacted Plaintiff's counsel and sent him for the first time – four months after the close of discovery – data it obtained from Mozeo suggesting that Defendant sent 104,331 welcome text messages to 104,331 unique cellular telephone numbers. (Meyers Decl. at ¶ 18.) Defendant had never previously produced this data, despite such information being requested in Plaintiff's discovery requests. (*Id.*) To the extent that Defendant is in possession of data that verifies this information, the ultimate size of the Class may be larger than the estimated 79,404 individuals that Plaintiff has confirmed received such messages. However, all of these individuals were sent the same "welcome" text messages, and in no way would such additional data – which includes personally identifying information that would allow for ascertainability of these additional class members – impact the class certification analysis here.

> Welcome to VIP status! Your gift: 20% OFF ur purch. Exclusive offers 2 come. Cannot combine RC 427 Expires in 30 days. www.Mandee.com Rply STOP to stop.

(Declaration of Carla Serrano, attached hereto, at ¶ 3; *see also* Ex. M at line 1.) Plaintiff's experience in receiving the above text message advertisement parallels that of the thousands of putative Class members in that Plaintiff never provided her phone number to a Mandee's sales associate in writing, never sent a text message communication *to* Defendant, and never provided her phone number through Mandee's website. (Complaint, Dkt. 82, at ¶ 21; Serrano Decl. at ¶ 4.) Rather, Defendant acquired Plaintiff's telephone number orally, after a Mandee's sales associate requested her number during the check-out process. (Serrano Decl. at ¶ 5.)

## III.  ARGUMENT

### A.  The TCPA

"Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Financial Services*, 132 S.Ct. 740, 744 (2012). "In enacting the TCPA, Congress noted the nuisance of rampant telemarketing and the consequent costs of money, time, and the invasion of privacy to consumers." *See Abbas v. Selling Source, LLC*, No. 09-cv-3413, 2009 WL 4884471, at *7 (N.D. Ill. Dec. 14, 2009) (internal citations omitted). Consequently, the TCPA prohibits parties from making:

> any call (other than a call made . . . with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).

Despite the TCPA making it unlawful to place unauthorized automated telephone calls to

cellular telephone numbers, including automated text messages,[14] the Federal Communication Commission ("FCC") still reports that "[m]onth after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the [FCC]." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, *FCC Declaratory Ruling*, *CG Dkt. No. 02-278*, 30 FCC Rcd. 7961, 7964 ¶ 1 (July 10, 2015) ("2015 FCC Ruling"). Accordingly, pursuant to the FCC's rulemaking authority, *see* 47 U.S.C. § 227(b)(2),[15] in 2012 the FCC released another set of regulations that further restricted the ability to send automated calls containing an advertisement only to individuals who provided their prior express *written* consent. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Report and Order, CG Docket No. 02-278*, 27 FCC Rcd. 1830, 1838 ¶ 20 (Feb. 15, 2012) ("2012 FCC Order").

The Federal Regulations implementing the TCPA codified the 2012 FCC Order and specifically prohibit any entity from making "any telephone call that includes or introduces an advertisement or constitute telemarketing, using an automatic telephone dialing system . . . to [a cellular telephone], other than a call made with the prior express written consent of the called party[.]" 47 C.F.R. § 64.1200(a)(2). The Federal Regulations further clarify that "the term prior express written consent means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver . . . advertisements or telemarketing messages

---

[14] Text messages constitute calls under the TCPA. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Report and Order, CG Docket No. 02-278*, 18 FCC Rcd. 14014, 14115 ¶ 165 (July 3, 2003); *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016), *as revised* (Feb. 9, 2016) ("A text message to a cellular telephone . . . qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii).")
[15] Pursuant to the Hobbs Act, "the FCC's final orders are binding on [District] court[s.]" *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 726 (N.D. Ill. 2011) (citing *CE Design Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 446–50 (7th Cir. 2010)).

using an automatic telephone dialing system[.]" 47 C.F.R. 64.1200(f)(8). It is also clear that the automated "welcome" text messages at issue here fall within the "written" consent requirements, as "telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase . . . of . . . goods[.]" 47 C.F.R. 64.1200(f)(12).

### B. Standards for class certification

Courts routinely certify class actions where a company engages in a uniform telephone marketing campaign in violation of the TCPA provisions cited above. *See, e.g., Birchmeier*, 302 F.R.D. at 256; *Stonebridge*, 289 F.R.D. at 295; *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 572 (W.D. Wash. 2012). Certification is similarly appropriate here and will help remedy the numerous TCPA violations committed by Defendant against the putative Class members.

Class certification is appropriate where all of the prerequisites of Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – are satisfied, as well as one of the three provisions of Rule 23(b). Fed. R. Civ. P. 23; *Spano v. The Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011). Here, Plaintiff seeks certification pursuant to Rule 23(b)(3). After establishing each of the Rule 23(a) requirements, a plaintiff seeking certification under Rule 23(b)(3) must then demonstrate that common questions of law or fact predominate over questions affecting only individual members, and that maintaining the suit as a class action is superior to other methods of adjudication. Fed. R. Civ. P. 23(b)(3); *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 759 (7th Cir. 2014). As set forth in detail below, the proposed Class meets the requirements of Rule 23(a) and Rule 23(b)(3), making certification clearly appropriate here.

### C. The proposed Class satisfies Rule 23(a) prerequisites

#### 1. The requirement of numerosity is satisfied.

The first prerequisite for certification is showing that "the class is so numerous that

11

joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). To satisfy this requirement a plaintiff need not demonstrate the exact number of class members, but must offer a good faith estimate as to the size of the class. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006). Although there is no "magical number," classes in the hundreds or thousands clearly satisfy numerosity. *See Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669 (N.D. Ill. 1989); *see also Miller v. Wexler & Wexler*, No. 97-cv-6593, 1998 WL 60798, at *3 (N.D. Ill. Feb. 6, 1998) (listing cases certifying classes with between 17 and 40 members).

Here, the proposed Class contains tens of thousands of individuals. As previously discussed, the records produced by mBlox show that Defendant sent the "welcome" text message advertisement to 79,404 unique cell phone numbers between October 17, 2013 and February 28, 2014. (Meyers Decl. at ¶ 14; Ex. M.) Even if Defendant's and/or its agents' records indicate that a small percentage of these individuals somehow provided their phone numbers through Defendant's website or by sending a text message to Defendant, there is no doubt that the Class would still consist of thousands of individuals. As such, the numerosity requirement is satisfied.

2. <u>The proposed Class is ascertainable</u>.

Although not explicitly required under Rule 23(a), in determining whether a case should proceed as a class action courts evaluate whether the class members can be readily identified. A class is "identifiable" if "its members can be ascertained by reference to objective criteria[.]" *Mitchem*, 271 F.R.D. at 619 (internal citations omitted); 7A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1760, at 121 (2d ed. 1987) (noting that the class must be defined in a way that is administratively feasible for a court to determine whether a particular individual is a member). However, to meet the ascertainability requirement the Court "need not ascertain 'absent class members' actual identities' . . . [r]ather, 'it is enough that the class be

12

ascertain*able*,' with class members to be identified during a claims administration process[.]" *Birchmeier*, 302 F.R.D. at 245 (citing *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417 (N.D. Ill. 2012)) (emphasis in original).

Here, the Class is readily ascertainable and defined with this goal in mind. Whether an individual is a member of the Class is easily determined by evaluating two objective criteria: (1) whether the individual received any of the three "welcome" text messages from Defendant at any time after October 16, 2013, and (2), whether the individual ever provided her cellular telephone number on a written form, through Defendant's website, or by sending a text message to Defendant, before receiving the "welcome" text message. In fact, Plaintiff already possesses all of the records identifying the unique cellular telephone number of each individual who received the welcome messages in question. (Meyers Decl. at ¶ 14; Ex. M.)

Furthermore, Defendant maintains original copies of the forms that identify which of those unique cell phone numbers were provided in writing and has already produced redacted copies identifying all 489 such individuals to Plaintiff's counsel. (*See* Ex. O.) To the extent that any of the cell phone numbers identified by Plaintiff were obtained by Defendant through Mandee's website, Defendant has indicated that such records can also be made available. (Ex. D at 57:12–22, 63:19–64:4.) Finally, although Defendant suggests that none of the cell phone numbers that were sent "welcome" text messages after October 16, 2013 were obtained by individuals sending a text message *to* Mandee (Ex. D at 28:9–29; Meyers Decl. at ¶ 17), any such individuals could be identified through records maintained by Defendant, Mozeo, and/or mBlox, the entity that would have received any incoming messages to Defendant's shortcode. (Ex. J at ¶ 29; Ex. D at 33:23–34:22.)

Once the cell phone numbers of the individuals who provided their number on a written

13

form, through Mandee's website, or by texting Mandee, are excluded from the list of 79,404 unique cell phone numbers, the actual identities of the Class members can be easily identified with particularity. *See Birchmeier*, 302 F.R.D. at 247 (rejecting the defendant's arguments that a list of unique cellular telephone numbers is insufficient to ascertain the class members identities); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07-cv-5953, 2009 WL 2581324, *4 (N.D. Ill. Aug. 20, 2009) (finding TCPA class identifiable because "[plaintiff] may use the log and fax numbers to 'work backwards' to locate and identify the exact entities to whom the fax was sent."); *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D 135, 141 (N.D. Ill. 2009) (same). In addition, a significant portion of the Class members can also be identified by simply using the cell phone numbers of the identified Class members to search Defendant's customer maintenance database records, which contains customers' names, addresses, email addresses, and other identifying information. (*See* Harvey Decl., Dkt. 32-1, at ¶ 7, 10; Ex. E at 29:4–12.)

Because membership in the proposed Class is easily determined based on objective criteria, and because the actual identities of the Class members can be established based on records that have already been produced or are readily accessible, the proposed Class is ascertainable. *See Birchmeier*, 302 F.R.D. at 248; *see also Boundas*, 280 F.R.D. at 418 (finding that a proposed class is ascertainable even if the actual "names and addresses" of the class members are not identified); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 661 (7th Cir. 2015), *cert. denied*, No. 15-549, 2016 WL 763259 (U.S. Feb. 29, 2016) (noting that ascertainability focuses on the "adequacy of the class definition itself" and not on the "difficulty [in] identify[ing] particular members of the class").

3.    The requirement of commonality is satisfied.

The second threshold to certification requires that "there are questions of law or fact

14

common to the class." Fed. R. Civ. P. 23(a)(2). This is met where a "common nucleus of operative fact" exists, even if as to one common question, *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), and is often found where "defendants have engaged in standardized conduct toward members of the proposed class." *Chapman v. Wagener Equities, Inc.*, No. 09-cv-07299, 2014 WL 540250, at *11 (N.D. Ill. Feb. 11, 2014) (quoting *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)). Commonality is a relatively "low hurdle" that is "easily surmounted." *Scholes v. Stone, McGuire, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

Here, the case is limited to a single count for violation of the TCPA, which is the same for each proposed Class member—Defendant sent the same automated "welcome" text message from the same shortcode, using the same technology, and without obtaining valid prior express written consent. Defendant's common course of conduct in violating the TCPA raises multiple factual and legal questions dispositive of all Class members' claims.

### i. The use of an ATDS

Whether Defendant's automated "welcome" text messages were sent using an ATDS is a common issue of law that can be resolved for all Class members at once. As Defendant's Manager of Marketing acknowledged, Defendant utilized the same third-party text messaging service provider – Mozeo – to send *all* of the text messages at issue. (Ex. C at ¶ 5; Ex. D at 17:10–24, 18:8–14.) In addition, as explained by Plaintiff's expert, Mr. Snyder, "[a]ll text messages sent to Defendant's customers, or using information from Defendant's database were sent from the same provider . . . using the same system and the same short code from at least May 2012 through at least December 2014" and "[t]here do not appear to be any variances in the system that was used to send a text message to any [of Defendant's] customers during that time period." (Ex. J at ¶ 42.) Thus, because Defendant sent the same text message, from the same

15

shortcode, using the same dialing equipment and the same vendor, the use of an ATDS is a common question that can be resolved for all Class members based on a common set of facts.

### ii.    The existence of valid consent

Whether Defendant obtained valid consent under the TCPA from the Class members to send the automated "welcome" messages is also a common question of law that is subject to a common determination. The TCPA requires that a sender of automated text messages obtain prior express written consent to send text messages that contain an "advertisement" or constitute "telemarketing." 47 C.F.R. 64.1200(f)(8). Whether the "welcome" text messages constitute an "advertisement" or "telemarketing" implicating the FCC's written consent regulations is itself a common question of law that can be resolved as to all Class members since they all received substantively identical text messages. (*See* Ex. M.) Similarly, whether Defendant's practice of sending such text messages to individuals who only provided *oral* consent (Ex. D at 58:4–24; Ex. F) is sufficient to qualify as "prior express written consent" is also determinable across the entire Class. The insufficiency of such notice – although readily apparent – is not something that need be determined at this time; the fact that it can be determined for *all* Class members in a single stroke demonstrates that the commonality requirement is satisfied here.

### iii.    Defendant's liability under the TCPA

The central legal determination in this case, Defendant's liability under the TCPA for sending the "welcome" text messages, is a common one that the record to date demonstrates can be answered on a class-wide basis. As discussed above, all of the messages were sent pursuant to a single policy and practice of Mandee's sales associates orally acquiring customers' cell phone numbers at check out. All of the messages contained identical content and were sent from the same shortcode and from the same vendor using the same equipment. Because Defendant's

16

conduct, and the resulting statutory violation, was identical in all material respects as to all Class members, Defendant's liability will also be easily resolved "in one stroke" on a class-wide basis.

<em>iv.</em>    <em>Damages</em>

Whether Plaintiff and the Class members are all entitled to the same damages is also a common question that easily lends itself to class-wide resolution. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). Each Class member suffered the same statutorily-proscribed invasion of privacy caused by the same course of conduct, and each is, therefore, entitled to the same damages. The TCPA provides for injunctive relief and damages of $500.00 per violation, with the possibility of trebling if a defendant's conduct was willful. 47 U.S.C. § 227(b)(3)(A–C). Accordingly, any determination of statutory damages, including the appropriateness of treble damages, will apply to the Class as whole. *See Targin Sign Sys., Inc. v. Preferred Chiropractic Ctr., Ltd.*, 679 F.Supp.2d 894, 898–99 (N.D. Ill. 2010) (finding that the statutory damages provided under the TCPA made any issues regarding individualized inquiries into damages suffered by class members "pure fiction").

Courts have repeatedly found the commonality requirement to be satisfied in TCPA cases such as this, where thousands of calls were made as part of an "organized program" and "standardized course of conduct." *See Hinman*, 545 F. Supp. 2d at 806–07 (collecting authorities); *see also Chapman*, 2014 WL 540250, at *11; *CE Design Ltd.*, 259 F.R.D. at 141. This is precisely the case here, where thousands of text messages were transmitted from a single shortcode, pursuant to a uniform policy and practice, using the same vendor and technology, and resulting in identical injury to the Class members.

4.    <u>Plaintiff's claim is typical of those of the other Class members.</u>

Rule 23 also requires that the class representative have a claim that is typical of those of

17

the putative class members. Fed. R. Civ. P. 23(a)(3). Typicality is closely related to commonality, and typicality will be satisfied if Plaintiff's claim arises from the same practice or course of conduct that gives rise to the claims of other Class members and is based on the same legal theory. *Chapman*, 2014 WL 540250, at *11 (citing *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). In fact, a finding of commonality supports a finding of typicality. *Arenson v. Whitehall Convalescent & Nursing Home, Inc.*, 164 F.R.D. 659, 664 (N.D. Ill. 1996). Typicality has been found where a defendant's practice of sending unsolicited advertisements to the proposed class resulted in the claims of the potential plaintiffs being "based upon the same legal theory, *i.e.* violation of the TCPA." *CE Design v. Beaty Const., Inc.*, No. 07-cv-3340, 2009 WL 192481, *5 (N.D. Ill. Jan. 26, 2009); *see also Gehrich v. Chase Bank USA, N.A.*, No. 12-cv-5510, 2016 WL 806549, at *4 (N.D. Ill. Mar. 2, 2016) (noting that "[a]ll class members allegedly received calls or text messages from [the defendant] in violation of the TCPA, and that is enough to satisfy the typicality requirement").

Here, Plaintiff's claim is identical to those of the Class members she seeks to represent. Plaintiff and the Class members all received the same "welcome" message sent by Defendant after October 16, 2013, from the same 24587 shortcode. (Ex. M.) In addition, Plaintiff, like the Class members, never provided her written consent to receive such messages, and never submitted her phone number through Mandee's website or by sending a text message to Mandee. (Serrano Decl. at ¶ 4.) Accordingly, Plaintiff's claim under the TCPA arises out of the same course of conduct, is based on the same legal theory, and resulted in the same injury that was suffered by all of the other members of the Class. The typicality requirement is clearly satisfied.

     5.   <u>Plaintiff and proposed Class Counsel will adequately represent the Class.</u>

The final Rule 23(a) prerequisite requires that the representative parties have and will

18

continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy of representation is composed of two parts: the adequacy of the named plaintiff's ability to protect the interest of the class members, and the adequacy of the named plaintiff's counsel. *Johnson v. Yahoo!, Inc.*, No. 14-cv-2028, 2016 WL 25711, at *3 (N.D. Ill. Jan. 4, 2016). A named plaintiff will be considered an adequate class representative as long as she does not "have antagonistic or conflicting claims with other members of the class" and has "a sufficient interest in the outcome to ensure vigorous advocacy[.]" *Robles v. Corp. Receivables, Inc.*, 220 F.R.D. 306, 314 (N.D. Ill. 2004). Proposed class counsel "must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously." *Id.* (citing *Gammon v. G.C. Services Limited Partnership*, 162 F.R.D. 313, 317 (N.D. Ill. 1995)).

Here, there is little question that Plaintiff has the same interests and shares an identical claim with all other Class members. Plaintiff and all of the Class members received the same unauthorized "welcome" text message, and like the other members of the Class, Plaintiff never provided her prior express written consent to receive such messages. (Ex. M; Serrano Decl. at ¶ 4.) As the mBlox records demonstrate, Plaintiff was just one of the tens of thousands of individuals who received an identical text message from Defendant (Ex. M), and Defendant obtained Plaintiff's phone number through the same common practice of Mandee's sales associates orally asking customers for their cellular telephone number. (Serrano Decl. at ¶ 5; Ex. C at ¶¶ 13, 14–17; Ex. D at 58:4–24; Ex. E at 18:22–19:9; Ex. F.) Accordingly, because Plaintiff suffered the same statutory violation and is entitled to the same statutory damages as every other Class member, Plaintiff has no interests antagonistic to the other Class members. Finally, Plaintiff's pursuit of this matter demonstrates that she will zealously advocate for the Class and put its interests ahead of her own. Plaintiff is aware of her responsibility to the Class members

19

and is committed to acting in their best interests.  (Serrano Decl. at ¶ 2.)

Proposed Class Counsel, Evan M. Meyers and Eugene Y. Turin of McGuire Law, P.C., have regularly engaged in major complex and class action litigation, have extensive experience in TCPA class actions, and have an in-depth knowledge of the substantive law at issue in this case.  (*See* Meyers Decl. at ¶¶ 20–21, 24.)  Further, the attorneys of McGuire Law, P.C. have been appointed class counsel in several complex consumer class actions, including similar TCPA class actions.  *See, e.g., Lozano v. Twentieth Century Fox*, No. 09-cv-6344 (N.D. Ill. 2011); *Kramer et al v. Autobytel et al.*, No. 10-cv-02722 (N.D. Cal. 2011); *Rojas et al v. Career Education Co.*, No. 10-cv-05260 (N.D. Ill. 2012); *Murray et al. v. Bill Me Later, Inc.*, No. 12-cv-04789 (N.D. Ill. 2014).  (Meyers Decl. at ¶¶ 20–21.)  Thus, both Plaintiff and Plaintiff's counsel will adequately represent the Class, and the final requirement under Rule 23(a) is, thus, satisfied.

### D.    The proposed Class also satisfies Rule 23(b)(3) standards

In addition to the Rule 23(a) prerequisites, Plaintiff must also meet one of the three requirements of Rule 23(b) to certify the proposed Class.  *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).  Under Rule 23(b)(3), a class action can be maintained where: (1) the questions of law and fact common to members of the class predominate over any questions affecting only individuals, and (2) the class action mechanism is superior to other available methods of resolving the controversy.  Fed. R. Civ. P. 23(b)(3); *Messner*, 669 F.3d at 811; *Robles*, 220 F.R.D. at 315.  Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (citing 7A Federal Practice & Procedure § 1777).  A case such as this, where individual recoveries would be small and but for a class action would not likely be pursued, is a

quintessential example of the practical utility of the class action mechanism.

    1.    <u>Common questions of law and fact predominate.</u>

The "purpose" of Rule 23(b)(3)'s predominance requirement is "to determine whether a proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" *Johnson*, 2016 WL 25711, at *6 (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The predominance requirement is satisfied when "common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication." *Messner*, 669 F.3d at 815. However, predominance can be established even if there are individual questions present; the inquiry is whether there is a "common nucleus of operative facts and issues" underlying the Class's claims such that the common facts and issues predominate over any individual facts and issues. *Id.* (citing *In re Nassau County Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006)). In fact, common questions have regularly been found to predominate where the class members' claims all arose under the TCPA as a result of a uniform advertising campaign. *See, e.g., Birchmeier*, 302 F.R.D. at 252; *Saf-T-Gard Int'l, Inc. v. Vanguard Energy Servs., LLC*, No. 12-cv-3671, 2012 WL 6106714, at *6 (N.D. Ill. Dec. 6, 2012); *Paldo Sign & Display Co. v. Topsail Sportswear, Inc.*, No. 08-cv-5959, 2010 WL 4931001, at *3 (N.D. Ill. Nov. 29, 2010).

The predominance test begins "with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S.Ct. 2179, 2184 (2011). Here, the elements of the Class members' claims are whether Defendant made text message calls to the cellular telephone numbers of the Class members, whether the calls were made using an ATDS, and whether Defendant had valid written consent to make such text message calls. *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2). As discussed above, each of these elements is

21

subject to common proof, and all of the Class members' claims can be adjudicated on a class-wide basis using such common proof. The call logs produced by mBlox demonstrate that Defendant sent identical "welcome" text messages to all of the Class members. (Ex. M.) Furthermore, Defendant has admitted that all of the text messages were sent from the same shortcode, using the same equipment operated by the same vendor. (Ex. C at ¶ 5; Ex. D at 17:10–24, 18:8–14; Ex. J at ¶ 42.) Accordingly, whether the text messages were sent using an ATDS can be decided for all Class members' claims based on the same common evidence.

Finally, Defendant's uniform policy of collecting the Class members' cellular telephone numbers orally, and not in writing as required by the TCPA and Federal Regulations, presents a common question that predominates over any individual issues concerning consent. The record clearly reveals that Plaintiff and the other Class members never provided prior express written consent to be sent the "welcome" text messages, as required under the TCPA. (Ex. D at 58:4–24; Ex. F; Serrano Decl. at ¶ 4; 47 C.F.R. § 64.1200(a)(2).) In addition, to the extent that Defendant attempts to raise any issues regarding how some individuals provided written consent, or signed up through Mandee's website or by texting Mandee, those issues do not predominate because such individuals are not members of the Class and can be easily separated. (*See supra* §§ II(B), III(C)(2); Ex. D at 33:23–34:22, 57:12–22, 63:19–64:4; Ex. O; Ex. J at ¶ 29.)

Accordingly, whether Defendant obtained valid written consent from the Class members – individuals who were sent messages *solely* after a Mandee's sales associate orally asked for their cell phone number – is a common question predominating over any individual issues of consent. *See Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344, 352 (N.D. Ill. 2008) ("When a class challenges a uniform policy or practice, the validity of that policy or practice tends to be the predominant issue in the ensuing litigation") (internal citations omitted); *see also Johnson*, 2016

22

WL 25711, at *7 (finding individual issues relating to class members' consent to receive text messages did not predominate because the defendant maintained "class-wide evidence" necessary to exclude individuals who provided proper consent.) Because each element of the Class members' claims against Defendant raises common issues that can be resolved by common proof, the predominance requirement is satisfied.

2.    A class action is a superior method for adjudicating this controversy.

The superiority requirement's purpose is one of judicial economy and to assure that a class action is the "most efficient and effective means of settling the controversy." *Ruiz v. Stewart Associates, Inc.*, 171 F.R.D. 238, 243 (N.D. Ill. 1997). Where, as here, tens of thousands of putative Class members have an identical claim under the same federal statute, "disposition by class action is certainly . . . an efficient use of judicial resources." *Chapman*, 2014 WL 540250, at *16. In addition, where class members would be limited to a small recovery – $500 pursuant to 47 U.S.C. § 227(b)(3)(B)) – individuals do not have a sufficient incentive to bring an individual claim. *Id.* (citing *Pastor v. State Farm Mut. Auto Ins. Co.*, 487 F.3d 1042, 1047 (7th Cir. 2007)). Accordingly, "Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006).

In determining whether a class action is the superior method, courts also often consider the following factors: (1) the class members' interest in individually controlling separate actions; (2) any litigation already begun by class members; (3) the desirability of concentrating the litigation in the particular forum; and (4) the difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3); *Chapman*, 2014 WL 540250, at *16. This case is particularly suited for class treatment because the Class members' interest in pursuing individual actions is minimal given

that most members of the Class would find the cost of litigating their claims – each of which is statutorily limited to $500 – to be prohibitive. Additionally, there are no other known TCPA-related lawsuits currently pending against Defendant.

Further, while very few, if any, of the Class members would be able to retain any relief absent a class action, the other potential alternative to class-wide relief is hundreds or thousands of the Class members filing individual suits. Because there are approximately 79,000 proposed Class members, it would be inefficient for courts to separately adjudicate hundreds or thousands of cases across the country, potentially resulting in inconsistent outcomes. A single class action, on the other hand, would efficiently and justly resolve the dispute for all Class members at once. *See Green v. Serv. Master On Location Servs. Corp.*, No. 07-cv-4705, 2009 WL 1810769, at *3 (N.D. Ill. June 22, 2009) (finding that superiority was satisfied in a case involving violations of the TCPA and noting that "[r]esolution of the issues on a classwide basis, rather than thousands (or zero) individual lawsuits is an efficient use of judicial resources.")

Finally, the claims of Plaintiff and the Class members can be easily managed as a class action. As set forth above, liability can be established on a class-wide basis as a result of Defendant's uniform and consistent practice of transmitting identical text messages to individuals who did not provide written consent using the same shortcode, equipment, and third-party vendor. (Ex. C at ¶ 5; Ex. D at 17:10–24, 18:8–14; Ex. F; Ex. J at ¶ 42.) Nor are there any potential difficulties with ascertaining the actual identities of the Class members and providing notice given that Defendant is in possession the cellular telephone numbers of all Class members as well as the names and email addresses for many of them. (Harvey Decl., Dkt. 32-1, at ¶ 7, 10; Ex. E at 29:4–12.) Accordingly, a class action is the superior vehicle for adjudicating this case— a result reached by many other courts in similar TCPA class actions. *See, e.g., Birchmeier*, 302

F.R.D. at 255; *Saf-T-Gard*, 2012 WL 6106714, at *6; *Paldo*, 2010 WL 4931001, at *3; *Hinman*, 545 F. Supp. 2d at 807; *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 650 (W.D. Wash. 2007).

### E. The Court should appoint Plaintiff's counsel as Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel" who can "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

Proposed Class Counsel have diligently investigated and prosecuted Plaintiff's TCPA claim, have at all times proceeded in the best interests of the Class, and have devoted, and will continue to devote, the necessary time and resources to this litigation. (Meyers Decl. at ¶ 26.) Proposed Class counsel have an in-depth knowledge of the applicable law, having been involved in scores of TCPA lawsuits. (*See* Meyers Decl. at ¶¶ 19, 21, 24.) Proposed Class Counsel also have experience with similar class action litigation and have been appointed class counsel in analogous TCPA class actions. (Meyers Decl. at ¶¶ 19, 21.) Accordingly, the Court should appoint Plaintiff's counsel to serve as Class Counsel pursuant to Rule 23(g).

## IV. CONCLUSION

For the reasons discussed above, Plaintiff Carla Serrano respectfully requests that the Court enter an Order: (i) certifying the proposed Class pursuant to Rule 23(b)(3); (ii) appointing Plaintiff Carla Serrano as Class Representative; appointing Evan M. Meyers and Eugene Y. Turin of McGuire Law, P.C. as Class Counsel; and (iv) awarding such additional relief as the Court deems reasonable and just.

Dated:  April 12, 2016          Respectfully submitted,

CARLA SERRANO, individually and on behalf of a class of similarly situated individuals

By:  /s/  Eugene Y. Turin
      One of Her Attorneys

Evan M. Meyers
Eugene Y. Turin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002
Fax: (312) 275-7895
emeyers@mcgpc.com
eturin@mcgpc.com

*Attorneys for Plaintiff and the Putative Class*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on April 12, 2016, I caused the foregoing *Plaintiff's Renewed Motion and Incorporated Memorandum of Law in Support of Class Certification* to be electronically filed with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to the following counsel of record:

Hal R. Morris
Elizabeth A. Thompson
ARNSTEIN & LEHR LLP
120 South Riverside Plaza
Chicago, IL 60606
hrmorris@arnstein.com
eathompson@arnstein.com

Christopher A. Mitchell
DICKINSON WRIGHT, PLLC
350 S. Main Street, Suite 300
Ann Arbor, MI 48104
cmitchell@dickinsonwright.com

/s/  Eugene Y. Turin_____

27