# Exhibit J

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

FRIEDA ZEIDEL, individually and on behalf of a class of similarly situated individuals,

Plaintiff,

v.

A&M (2015) LLC,

Defendant.

Case No. 13-cv-06989

Hon. Robert M. Dow, Jr.

## DECLARATION OF RANDALL A. SNYDER

I, Randall A. Snyder, hereby declare as follows:

1. My name is Randall A. Snyder. I am an adult over the age of 18 and a resident of the state of Nevada. I have personal knowledge of each of the matters stated herein, and if called to testify I could and would testify competently about them.

2. I am an independent telecommunications technology consultant and reside at 8113 Bay Pines Avenue, Las Vegas, Nevada, 89128. I have been retained by McGuire Law, P.C. in the matter *Zeidel v. A&M (2015) LLC,* 1:13-cv-06989 (N.D. Ill.) to provide my expert opinions relating to the mobile marketing technology utilized by A&M (2015) LLC, formerly known as YM LLC USA ("Defendant" or "YM").

3. My opinions in this declaration are based on my knowledge, education, experience, expertise, training and my review of the following documents in this case: First Amended Class Action Complaint; Defendant's Answer and Affirmative Defenses to Plaintiff's First Amended Class Action Complaint; Declaration of Jan Harvey in Support of Defendant's Motion for Summary Judgment; Deposition of Kim Berliner; Deposition of Jan

-1-

Harvey; Subpoena response from mBlox containing Message Detail Records dated June 1, 2013 through February 28, 2014; Neustar Invoices to Mozeo for Short Code 24587 dated November 15, 2009 through November 15, 2013; Neustar Receipts to Mozeo for Short Code 24587 dated November 13, 2009 through November 13, 2013; Mobile Marketing Association, U.S. Consumer Best Practices for Messaging, Version 7.0 (dated October 16, 2012); Mobile Marketing Association, Global Code of Conduct (dated July 15, 2008); the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and regulations promulgated thereunder; the Federal Communications Commission's ("FCC") Report and Order in the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 dated October 16, 1992; the FCC's Report and Order in the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 dated July 3, 2003; the FCC's Declaratory Ruling in the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 Request of ACA International for Clarification and Declaratory Ruling dated January 4, 2008; the Appeal from the United States District Court for the Northern District of California, No. 07-16356, D.C. No. CV-06-02893-CW Opinion, filed June 19, 2009; the FCC's Report and Order in the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 dated February 15, 2012; the FCC's Notice of Proposed Rulemaking in the Matter of the Middle Class Tax Relief and Job Creation Act of 2012, Establishment of a Public Safety Answering Point Do-Not-Call Registry dated May 22, 2012; the FCC's Declaratory Ruling in the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, SoundBite Communications, Inc. Petition for Expedited Declaratory Ruling dated November 29, 2012; and the FCC's Declaratory Ruling in the Matter of Rules and

Regulations Implementing the Telephone Consumer Protection Act of 1991 dated July 10, 2015.

4. I have over 30 years of experience in telecommunications network and system architecture, engineering, design and technology. I am an expert in the fields of both wireline and wireless telecommunications networking technology. A copy of my *curriculum vitae* is attached to this Declaration. I have been retained as a testifying or consulting expert in over 100 cases regarding cellular telecommunications technology, including over 60 cases regarding Short Message Service ("SMS") technology and over 70 cases regarding the TCPA and associated regulations. In addition, I have been retained as an expert by both plaintiffs and defendants in cases involving the TCPA.

5. I have taught many classes and seminars on both wireline and wireless telecommunication network technologies and have been a panelist and speaker at numerous conferences at the Institute of Electrical and Electronics Engineers ("IEEE"), the Personal Communication Society ("PCS"), and the Cellular Telecommunications and Internet Association ("CTIA") as an expert in telecommunication networks. I spent seven years developing standards within the American National Standards Institute's subsidiary organization, the Telecommunications Industry Association ("TIA"), providing technical contributions and authoring and editing telecommunications proposed standards documents. Most notably, I authored and oversaw the standardization of Interim Standard 93, providing interconnection technology between wireline and wireless networks, which is a fully accredited national standard of the American National Standards Institute ("ANSI").

6. I am the co-author of the McGraw-Hill books "Mobile Telecommunications Networking with IS-41," and "Wireless Telecommunications

-3-

DECLARATION OF RANDALL A. SNYDER

Networking with ANSI-41, 2nd edition" published in 1997 and 2001, respectively. I have been issued 26 patents myself on telecommunications networking technology and currently have five additional published patents pending. I have also authored several articles on telecommunications technology and have been quoted numerous times in industry trade publications. I have been hired as a consultant by the CTIA, as well as by many wireline and wireless telecommunications companies, including Bell Laboratories, McCaw Cellular, AirTouch, AirTouch International, AT&T Wireless, AT&T Mobility, Lucent, Nokia, Ericsson, Motorola, Samsung, Siemens, Nextwave, MCI, Daewoo, Globalstar, T-Mobile, Sprint, U.S. Cellular, Teleglobe Canada, Teledesic and other telecommunications technology vendors and service providers. I was also nominated in 2006 for a National Television Arts Emmy Award for Outstanding Achievement in Advanced Media Technology for unique wireless content distribution technology I designed while employed at Entriq, Inc.

7. In addition, in 2002, I was co-founder of m-Qube, Inc., one of the first text message-based mobile marketing companies in North America. m-Qube founded and established the Mobile Marketing Association (see http://www.mmaglobal.com) which subsequently established the technology and methodology for the use of text message based short codes as well as mobile marketing guidelines and rules within North America.

8. Moreover, I have been issued ten patents on SMS technology, including the invention of short code technology, and my books have been cited in four additional issued patents on SMS technology. Still more detail, as well as details of publications that I have authored or co-authored within at least the past 10 years, are provided in my attached *curriculum vitae* (a true and correct copy of which is attached hereto as Exhibit A) along with a list of cases where I served as a testifying or consulting expert and my standard rate sheet. I

-4-

DECLARATION OF RANDALL A. SNYDER

am being compensated at the rate of $450 per hour for my study, analysis and testimony in this case.

## INTRODUCTION

9. Based on my review of the relevant documents and the facts described below, it is my expert opinion that the Defendant began using its mobile marketing system and platform, provided by Mozeo LLC, as far back as at least May 2012 and continued to use that same system and platform at least as of December 2014. The Defendant used this automated text message communications system to transmit thousands of automated text messages *en masse* to consumers and to provide the same user experience common to all cellular subscribers. I base this opinion on my knowledge, education, experience, expertise, training and on the evidence I have reviewed.

## INDUSTRY BACKGROUND

10. The use of Short Message Service, more commonly known as "text messaging" in the U.S., has become ever-present. SMS is a communications system and method that was designed to enable an individual cellular telephone subscriber to send, or originate, a short text message communication (typically no more than 160 characters) from his or her cellular telephone to another individual subscriber's cellular telephone that is the intended destination of the message, *i.e.*, the message recipient. SMS text messages are sent individually from one subscriber to another using a cellular telephone number as the destination address of the message. The message sender's cellular telephone number is preserved as part of the message at the destination cellular telephone where the message is received so that the message recipient knows the cellular telephone number of the message sender.

-5-
DECLARATION OF RANDALL A. SNYDER

11. Over the past several years many companies have emerged that provide what is known as value-added text messaging services using SMS technology, meaning that they provide a variety of text messaging services (*i.e.*, SMS) that are not strictly peer-to-peer in the sense of subscriber-to-subscriber manual communications; rather, these companies use automated computer equipment to send and receive text messages using SMS to and from individual cellular telephone subscribers. These "mobile marketing" companies are external entities to the cellular network carriers.

12. Mobile marketing companies are typically in the business of creating and operating text message-based applications on behalf of other branded companies in order to develop and maintain communication with cellular telephone subscribers for commercial purposes. The automated computer equipment that these mobile marketing companies utilize is used for a variety of text messaging applications, marketing campaigns and dialogs on behalf of the branded company to communicate with cellular subscribers. Common applications are voting (the most popular example being the text message voting used to vote for contestants on the *American Idol* television program) as well as receiving news alerts, informative notifications, coupons and sports scores where short messages are sent to cellular subscribers on a regular basis.

13. Moreover, these mobile marketing companies utilize equipment that has the ability to send any number of text messages *en masse* to cellular telephone subscribers as well as receive individual text messages from those subscribers, on behalf of a branded company. Messages sent from the branded company, using a mobile marketing company's computerized messaging platform, to a cellular subscriber are termed "mobile-terminated" and messages sent from a cellular subscriber to a branded company are termed "mobile-

-6-
DECLARATION OF RANDALL A. SNYDER

originated."

14. Mobile marketing companies send and receive text messages by connecting to the cellular carrier networks using internet-based connections and communications protocols. The primary protocol used is known as the Short Message Peer-to-Peer ("SMPP") protocol. SMPP is an internet-based communications protocol specifically designed for communications between a mobile marketing company and a cellular network's Short Message Service Center ("SMSC"). SMSCs are network entities that are maintained and controlled within the cellular carriers' networks and are the store and forward repositories for text messages to be both delivered to and sent from mobile subscribers.

15. Mobile marketing companies' connections to the cellular network operators are internet connections and typically use a special number as the address by which cellular text messages are sent and received in order to communicate with cellular subscribers. All messages sent to a particular subscriber are delivered to that subscriber's "home" SMSC within the subscriber's home cellular network. Since mobile marketing companies are not cellular subscribers, they are not identified by a mobile telephone number; rather, they use a special number as an originating address for text messages sent to cellular subscribers. This number is known as a "short code." A short code is a special and unique 5- or 6-digit number that is obtained from an independent agency, Neustar, Inc.[1] ("Neustar"), that manages and assigns these number resources in the U.S.

16. In many cases, mobile marketing companies do not connect directly to the cellular carrier networks (*e.g.*, Verizon Wireless or AT&T Mobility). Establishing and maintaining direct connections to individual carrier networks is expensive, time consuming

---

[1] *See* https://www.neustar.biz/services/sms-marketing.

-7-
DECLARATION OF RANDALL A. SNYDER

and technically difficult. Because of business and technical barriers, mobile marketing companies such as Mozeo connect indirectly to the carrier networks through intermediary companies known as SMS aggregators. Here, Mozeo made such carrier connections through one such aggregator, mBlox, Inc. These SMS aggregators are in the business of connecting to multiple cellular carrier networks and reselling that connectivity to mobile marketing companies.

17. Aggregation of multiple cellular carrier network connections into a single connection is highly advantageous to a mobile marketing company. First, it enables a mobile marketing company to send and receive text messages to and from cellular telephone subscribers quickly and easily. Second, it enables the mobile marketing company to send and receive text messages to and from all mobile subscribers in the U.S. at once, regardless of which cellular carrier serves them. And third, SMS aggregators can ensure that any short codes used to access SMS applications are provisioned on all the cellular carrier networks.

18. Mobile marketers typically provide a software-based application programming interface ("API") or a website based portal that can be used by their branded company clients to develop a software application and connect to their message delivery platform for that application. An API is essentially a programmatic method of communication between two computer systems. These methods enable a branded company to create a template for the content that will appear in the body of the text messages, upload a list of cellular telephone numbers for which the text messages are to be sent and send the messages via the mobile marketing company's platform. Furthermore, a software application using the API or operated via the website-based portal of the mobile marketing company can be created to send out cellular text messages *en masse* to a stored list of cellular telephone

-8-

DECLARATION OF RANDALL A. SNYDER

numbers.

19. According to Ms. Jan Harvey, Director of Marketing for YM, "YM contracted with mobile marketing company Mozeo LLC to use contact information from the Customer Maintenance database to send text messages to those customers." (Exhibit B, Harvey Decl., ¶15.) Mozeo, LLC[2] ("Mozeo") is the mobile marketing company employed by Defendant to automatically transmit cellular text messages *en masse* using the short code 24587. Defendant has been using Mozeo to transmit text messages since at least as early as May 2012 through at least as recently as December 2014. Mozeo operates an automated computer equipment system providing SMS-based services that enable text message communications between the automated system and cellular telephone subscribers. The messaging services that Mozeo enables, and which can be operated via their website-based portal, are used to form a commercial relationship with cellular subscribers and to use the cellular networks and text messaging technology to form that relationship.

**FACTS REGARDING THE PLAINTIFF**

20. According to her complaint, on June 5, 2013, Plaintiff Freida Zeidel received a text message call on her cellular telephone (312-259-9133) from the short code number "24587." The content of the text message read:

> **"Welcome to VIP status! Your gift: 20% OFF ur purch. Exclusive offers 2 come. Cannot combine RC 427. Expires in 30 days. www.Mandee.com Rply STOP to stop."**

21. According to Ms. Harvey, this is the "welcome" text message first sent to Defendant's customers. (Exhibit B, Harvey Decl., ¶12.) Furthermore, Ms. Harvey stated, "YM maintains an electronic Customer Maintenance database containing contact and other

---

[2] *See* https://www.mozeo.com.

-9-

DECLARATION OF RANDALL A. SNYDER

information for customers of YM's retail clothing stores…" (Exhibit B, Harvey Decl., ¶4.) Ms. Harvey also testified that Mozeo transmitted text messages using information from that database since at least May 2012. (Exhibit C, Harvey Dep., at 20:19-22:2, 33:4-8, 52:8-56:2.) Furthermore, the data produced by mBlox in response to Plaintiff's subpoena clearly evidence the mass transmission by Mozeo of text messages to thousands of telephone numbers in rapid succession if not simultaneously on behalf of Defendant.

22. Based on my knowledge, education, experience, expertise, training and the aforementioned evidence, it is my expert opinion that the Plaintiff received this text message as a result of Mozeo's automated mobile marketing text messaging system sending it to her cellular telephone number and other cellular telephone subscribers. These marketing messages are not messages that are sent by a human; rather, they are automated text messages sent from Mozeo's computerized messaging system.

**FACTS REGARDING YM AND MOZEO**

23. YM owns and operates several retail clothing businesses, or brands, that market and sell products to consumers. Examples of these retail brands are Mandee and Annie Sez.

24. Mozeo is a mobile marketing company that provides automated text messaging services to branded companies, such as those operated by YM.

25. Mozeo provides its mobile marketing services as a "hosted" solution, also known as a "cloud" solution. A hosted/cloud system is a software delivery model whereby software and associated data are centrally hosted in the "cloud," meaning a large, centralized computer equipment system serving multiple remote users in real-time via the Internet. These systems are typically accessed by customer users using a web-based application through a

-10-
DECLARATION OF RANDALL A. SNYDER

web browser. Hosted/cloud solutions have become a common delivery model for many business applications because the centralized computer equipment can serve hundreds or thousands of remote customer users from the single hosted platform. In this case, Mozeo manages and operates the centralized hosted computerized software and equipment that provides automatic text messaging services to multiple remote branded company clients using real-time internet connections. Mozeo is the mobile marketing text message service provider for YM.

26. Mozeo was the lessee of the short code "24587" from Neustar during the relevant period and has been back to at least November 15, 2009. Exhibit D shows Mozeo's current use of "24587" in the terms and conditions of their website.[3] In addition, Exhibit E shows YM's current use of "24587" for its MANDEE brand in the terms and conditions of its website.[4] Exhibit F shows Mozeo's receipt from Neustar from November 15, 2009.

27. According to Ms. Kim Berliner, Manager of Information Technology at YM, when asked in her deposition which company YM uses to send out text messages she replied, "As far as I know, they use Mosio [*sic*]." Furthermore, she stated, "I was always under the impression that it was always Mosio [*sic*]." (Exhibit G, Berliner Dep., at 53:17-24.) Ms. Harvey confirmed that Mozeo has been used by YM at all times since at least May 2012. (Exhibit C, Harvey Dep., at 33:4-8.)

28. From this evidence it appears that Mozeo was the single mobile marketing technology system and platform employed by YM from at least as far back as May 2012 until at least December 2014.

---

[3]*See* https://www.mozeo.com/mozeo-policies.php.
[4]*See* http://www.mandee.com/privacy.html.

-11-
DECLARATION OF RANDALL A. SNYDER

## MESSAGE DETAIL RECORDS

29. For TCPA cases involving alleged text message violations, message detail records are often provided by the mobile marketing company. Mobile marketing companies typically record and maintain data regarding the text message communications enabled between the branded company and the cellular subscriber for several years.

30. For each message sent or received by a cellular subscriber, the record contains the calling party number (*i.e.*, the party originating the message or the short code), the called party number (*i.e.*, the party to whom the message is sent), the date the message was sent (*i.e.*, the month, day, year), the time the message was sent (*i.e.*, the hour and minute) and the body of text message (*i.e.*, the message content).

31. I have analyzed the message detail records for the time period provided by mBlox for the period from June 1, 2013 through February 28, 2014.

32. These records clearly show the text message sent to the Plaintiff on June 5, 2013 at 12:58. (Exhibit H, at p.3.) In fact, Mozeo's text messaging system sent out 148 of these identical text messages to 148 cellular subscribers within just that one-minute time period.

33. An analysis of the full nine months of message detail records from mBlox reveals tens of thousands of text messages transmitted by Mozeo on behalf of YM originating from the short code "24587." It is clear that these messages were transmitted by a computer platform and in an automated fashion.

34. Based on my knowledge, education, experience, expertise, training and my review of the following documents, it is my expert opinion that the text messages sent to the Plaintiff and other cellular subscribers on behalf of YM were automated and sent *en*

*masse* by Mozeo's mobile marketing system.

**CONCLUSIONS**

35. YM owns and operates several retail clothing businesses, or brands, that market and sell products to consumers.

36. Mozeo is a mobile marketing company that provides automated text messaging services to branded companies, such as YM.

37. YM has continually used the short code "24587" for mobile marketing campaigns and promotions and that short code is exclusively provided by Mozeo and has been leased to Mozeo by Neustar since at least November 2009.

38. Ms. Jan Harvey who has worked for YM since May 2012, testified that YM has always used Mozeo as its mobile marketing technology system since at least May 2012. (Exhibit C, Harvey Dep., at 33:4-8.) Additionally, both Ms. Harvey and Ms. Berliner testified YM continued to use Mozeo as of December 2014. (Exhibit C, Harvey Dep., at 33:4-5; Exhibit G, Berliner Dep., at 53:17-24.) Ms. Berliner also testified that all new customer records in YM's database were automatically sent to Mozeo and that Mozeo then automatically transmitted text messages to such telephone numbers. (Exhibit G, Berliner Dep., at 47:2-48:5.)

39. Therefore, it is clear that YM has used, and continues to use, at least as of December 2014, the exclusive mobile marketing platform provided by Mozeo. The system utilized by Mozeo for YM over the past several years has used essentially the same technology throughout that time, and there is no evidence in the record provided that the primary or basic functionality of Mozeo's system has significantly changed at any time during the period when it was sending automated text messages on behalf of YM. That is, the

interactive mobile marketing technology implemented by Mozeo on behalf of YM provides essentially a common functional user experience to all cellular subscribers. All text messages sent to YM customers, or individuals from the YM database, between at least May 2012 through at least December 2014, were sent in the same manner, from the same short code, using the same system, from the same provider (*i.e.*, Mozeo).

40. Based on my review of the relevant documents and the facts described above, it is my expert opinion that YM has been using the same mobile marketing system and platform provided by Mozeo since at least May 2012 through at least December 2014. The Defendant used this automated text message communications system to transmit thousands of automated text messages *en masse* to consumers.

**SUMMARY OF OPINIONS**

41. I can confidently state that Mozeo is a mobile marketing company providing an automated mobile marketing text message service on behalf of YM. It is clear that Mozeo's automated computer equipment was used to send cellular text messages to cellular telephone subscribers *en masse*.

42. It is my expert opinion, based on my knowledge, education, experience, expertise, training, my review of the relevant documents and the facts described above, that YM employed at least during the period of May 2012 to December 2014 an automated text message system provided by Mozeo and that Mozeo was the sole provider of any text message system utilized by YM since at least May 2012, and through at least December 2014. The functionality provided by Mozeo to YM provides essentially a common functional user experience to all cellular subscribers and has done so as at least as far back as May 2012. All text messages sent to YM customers, or using information from YM's database,

-14-

DECLARATION OF RANDALL A. SNYDER

were sent from the same provider (*i.e.*, Mozeo), using the same system and the same short code from at least May 2012 through at least December 2014. There do not appear to be any variances in the system that was used to send a text message to any YM customers during that time period.

43. My opinions in this declaration are based upon extensive experience in the telecommunications industry, a detailed understanding of telecommunications systems, a detailed understanding of Short Message Service ("SMS") technology, a detailed understanding of mobile marketing employing SMS technology and a detailed understanding of message detail records. I hereby reserve the right to supplement or modify my opinions detailed in this report to the extent that new information is made available through discovery or other means.

I declare that the foregoing is true and correct subject to the laws of perjury of the United States.

Executed in Las Vegas, Nevada, on this 4th day of September 2015.

*Randall A. Snyder*
_____
Randall A. Snyder