THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| FRIEDA ZEIDEL and CARLA SERRANO, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| *Plaintiffs*, | ) ) | No. 13-cv-06989 |
| v. | ) ) ) ) | |
| A&M (2015) LLC | ) ) | Hon. Robert M. Dow, Jr. |
| *Defendant*. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S
PROPOSED STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT
AND PLAINTIFFS' STATEMENT OF ADDITIONAL FACTS REQUIRING DENIAL
OF SUMMARY JUDGMENT**

Plaintiffs Frieda Zeidel and Carla Serrano, by their undersigned counsel, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, hereby respond to Defendant A&M (2015) LLC's ("Defendant" or "A&M") Rule 56.1(a) Statement of Undisputed Material Facts in Support of Defendant's Second Motion for Summary Judgment as follows:

For convenience, the index of all exhibits referenced herein is as follows:

**Exhibit A**: Excerpts of Transcript of January 8, 2015 Deposition of Jessica Ramos;

**Exhibit B**: Excerpts of Transcript of December 17, 2014 Deposition of Kim Berliner;

**Exhibit C**: Excerpts of Transcript of November 12, 2014 Deposition of Frieda Zeidel;

**Exhibit D**: Excerpts of Transcript of December 18, 2014 Deposition of Jan Harvey;

**Exhibit E**: Declaration of Randall Snyder in Support of Plaintiffs' Opposition to Defendant's Second Motion for Summary Judgment;

**Exhibit F**: Excerpts of documents produced by Defendant, bates stamped YM 0090 and YM 0101;

**Exhibit G**: Screenshot of Mozeo, LLC's web page, "https://mozeohelp.zendesk.com/hc/en-us/articles/205548838-What-is-a-Text-to-Win-contest-", as it appeared on June 2, 2016;

**Exhibit H**: Screenshot of Mozeo's web page, "https://mozeohelp.zendesk.com/hc/en-us/articles/206311727-How-do-I-pick-random-winners-", as it appeared on June 2, 2016;

**Exhibit I**: Excerpts of text message transmission logs produced by mBlox, Inc.

**Exhibit J**: Declaration of Carla Serrano in Support of Plaintiff's Renewed Motion for Class Certification (Dkt. 99-2);

**Exhibit K**: Excerpts of Transcript of December 4, 2015 Deposition of Jan Harvey;

**Exhibit L**: Declaration of Jan Harvey in Support of Defendant's First Motion for Summary Judgment (Dkt. 32-1);

**Exhibit M**: Document produced by Defendant, bates stamped YM 0047;

**Exhibit N**: Declaration of Gregory Lisnyczyj in Support of Defendant's Second Motion for Summary Judgment (Dkt. 96-4);

**Exhibit O**: Defendant's Response to Plaintiff's Statement of Additional Undisputed Facts Requiring Denial of Summary Judgment (Dkt. 52);

**Exhibit P**: Defendant's Answer to Plaintiffs' Second Amended Class Action Complaint (Dkt. 88);

**Exhibit Q**: Document produced by Defendant, bates stamped YM 0054.

1. Defendant A&M (2015) LLC, a Delaware limited liability company, owns and operates the MANDEE brand of retail clothing stores in the United States.

RESPONSE: Undisputed.

2. Plaintiff Frieda Zeidel, an individual, is a citizen of Illinois.

RESPONSE: Undisputed.

3. Plaintiff Carla Serrano, an individual, is a citizen of Illinois.

RESPONSE: Undisputed.

4. Jurisdiction in this Court is proper as Plaintiff's Complaint is brought under Federal law; namely, the Telephone Consumer Protection Act, 47 U.S.C. Section 227 *et seq.* (the "TCPA").

RESPONSE: Undisputed.

5. Venue in this Court is proper as Defendant's conduct alleged to violate the

TCPA (a single text message sent to each Plaintiff's cellphone) took place in this judicial district, where Plaintiffs reside.

RESPONSE: Undisputed.

6. For the period from approximately May 28, 2013, until approximately March 25, 2014, A&M caused marketing text messages to be sent to its MANDEE customers through a text message marketing platform offered by third party Mozeo, LLC ("Mozeo"). During that period of time, A&M only used Mozeo to send to text messages to A&M's MANDEE customers.

RESPONSE: Undisputed.

6-1.[1] The only MANDEE store customers who were sent text messages were those whose contact information is stored in a Customer Maintenance database.

RESPONSE: Undisputed.

7. The Customer Maintenance database consists only of information voluntarily provided by MANDEE customers, including via the MANDEE website (www.mandee.com) and in response to sales associates' requests as to whether such customers would like to receive text messages with discount offers and notice of new merchandise arrivals. Customer information voluntarily given to a sales' associate is entered into the Customer Maintenance database by a sales associate at the time the sales associate is interacting with the customer.

RESPONSE: Plaintiffs do not dispute that the Customer Maintenance database consists only of information voluntarily provided by MANDEE customers, but Plaintiffs dispute that the information provided by MANDEE customers was in response to sales associates' "requests as

---

[1] Defendant's Statement of Undisputed Facts contains two statements that are both numbered "6." So as to avoid any confusion and so as to not disrupt Defendant's numbering for all subsequent statements, Plaintiffs have re-numbered the "second" statement number 6 as statement number "6-1."

2

to whether such customers would like to receive text messages with discount offers and notice of new merchandise arrivals." Jessica Ramos, the store manager for the MANDEE store visited by Plaintiffs Zeidel and Serrano, testified that the information provided by a customer could be in response to a variety of requests, including a sales associate's plain request for a customer's information without any qualification and without any mention of text messages. (Ex. A at 36:9–13, 42:13–43:4, 44:13–19; Ex. C at 25:12–13.) Ms. Ramos further testified that there is no way to know after the fact what was said by an employee to a customer, or what the employee said in order to prompt the customer to provide any information, and that the database itself does not identify what information was said to the customer in order to obtain the customer's information. (Ex. A at 29:16–19, 36:5–13, 41:18–22, 42:13–43:4.) Additionally, Plaintiffs specifically dispute that they provided any information to MANDEE in response to a sales associate's request as to whether they would like to receive text messages. (Ex. C at 20:15–17, 25:12–26:3, 28:6–9; Ex. J at ¶ 5.)

Plaintiffs further dispute that information provided by a customer is entered into the Customer Maintenance database by a sales associate at the time the sales associate is interacting with the customer, as sales associates do not have direct access to the Customer Maintenance database, and any information collected from a customer is stored on a local computer in the store and is then later automatically uploaded to the Customer Maintenance database. (Ex. A 14:21–15:10; Ex. B at 21:24–22:18, 24:15–23.)

Finally, Plaintiffs dispute that the Customer Maintenance database is populated only with information provided by a customer at the time of interaction with a sales associate. The "Phone opt-in" database field — which indicates via a "Yes" or "No" whether a customer has opted in to receive text messages — is automatically and by default populated with a "Yes" any time that a

3

customer provides a telephone number, even if a customer never affirmatively stated that he or she wanted to receive text messages. (Ex. A at 36:9–13; Ex. B at 26:17–27:9, 56:10–14.) This automatic population of the "Phone opt-in" database field is not done by a sales associate, but rather is done through a remote automatic process separate from any interaction between the sales associate and the customer. (Ex. B at 26:21–27:9.)

8. Mozeo provides its clients, including A&M, an Internet-accessible platform (including a dashboard and related services) used to create and send email and/or text messages to their existing and potential customers.

RESPONSE: Undisputed.

9. Mozeo's said platform allows each client to create and update a contact list. These contact lists include names, addresses, email addresses and telephone numbers. Each Mozeo client is solely responsible for adding, removing or editing its own contacts (numbers can be input manually, one-by-one, or can be imported from an appropriate data file, such as, for instance, an Excel spreadsheet).

RESPONSE: Plaintiffs do not dispute that Mozeo's platform allows its clients to create and update contact lists and that Mozeo's clients are responsible for adding, removing or editing its own contacts. However, to the extent that Defendant implies that numbers that were sent the "welcome" messages at issue in this case (Plf's 2nd. Amen. Compl., Dkt. 82, at ¶ 16) were in any way "manually" transferred by an individual from Defendant's Customer Maintenance database to Mozeo's system, Plaintiffs dispute the above statement. Defendant's Director of Marketing during the relevant time period, Jan Harvey, testified that new customers' contact information was *automatically* sent to Mozeo and that there was "no individual who sends it to Mo[zeo.]" (Ex. D at 38:17–39:3.) Defendant's "Manager of IT" also similarly testified that the "new

4

customer records" to which "welcome text[s]" are sent "automatically get[] sent to Mo[ze]o to send the text message[.]" (Ex. B at 46:18–47:13, 47:25–48:6.)

10. Mozeo also offers a service by which clients can ask their customers to send a text message to Mozeo with the client's name in the message, e.g., "Mandee" or "A&M." After receiving such a message, Mozeo's system will add that specific customer's phone number to the appropriate client's contact list.

RESPONSE: Plaintiffs do not dispute that Mozeo offers the service described in Defendant's Proposed Statement No. 10, but Plaintiffs dispute that either of their phones numbers were added to Defendant's "contact list" as a result of sending any text message and dispute that the above-stated service offered by Mozeo is in any way relevant to this litigation.

11. For text messages, Mozeo's said platform allows clients to send messages using a shared SMS short code, i.e., a code assigned by text-message aggregators that multiple entities can use to send text messages. SMS short codes cannot be used to make or receive voice calls.

RESPONSE: Undisputed.

12. Mozeo's clients – including A&M – must engage in a multi-step process to send a text message using Mozeo's platform; namely:

    a. The client must select the one or more recipients from that client's contact list;

    b. An individual must input the content, i.e., text, of the message that the client wants to send to its selected contact(s);

    c. The client must determine when to send the message;

    d. The client must finalize and confirm the details of the message, including the content, that it intends to send; and

    e. At that point, Mozeo's system interfaces with its text message aggregator, i.e.,

5

third party MBlox, who interfaces with the appropriate wireless carriers and delivers the specific message (using the shared SMS short code) to the phone numbers of the recipients selected by the Mozeo client.

RESPONSE: Plaintiffs dispute that *all* text messages sent using Mozeo's platform – including specifically the "welcome" messages at issue in this case – require Mozeo's clients, including Defendant, to engage in the above multi-step process. The welcome messages at issue in this case were automatically sent to all individuals whose phone numbers were inputted by a Mandee's sales associate into an electronic cash register. (Ex. D at 33:15–23; Ex. B at 46:11–25; Ex. O at ¶ 25.) Accordingly, for the welcome messages to be sent out Defendant did not have to "select one or more recipients" from its contact list because "the new customer records" to which the welcome messages were sent were "automatically" sent to Mozeo. (Ex. B at 47:2–13, 47:25–48:6.) Nor did Defendant have to "determine when to send the message" or "finalize and confirm the details of the message . . . that it intends to send." (Ex. D at 33:20–34:2 (noting that the welcome messages are "regularly sent out . . . almost immediately upon the person [becoming a member]" and that there is no specific schedule for when they are sent out); Ex. B at 47:5–13 (noting that the new customer records are "automatic[ally]" sent to Mozeo without any involvement from Defendant's employees)). Plaintiffs do not dispute that Mozeo's system has to interface with a text message aggregator in order to deliver the messages.

  13. Thus, the Mozeo platform requires considerable human intervention in order for a Mozeo client to send a text message. Specifically: At least one human being must decide on and approve the content, i.e., text, of a message; at least one human being must select the message's recipients; at least one human being must decide when the messages will be sent – whether immediately or at some point in the future; at least one human being must press a

6

button to send, or schedule the sending of, those messages; and, moreover, at least one human being can delete a scheduled message before it is sent and, optionally, can schedule a new message in its place.

RESPONSE: Plaintiffs dispute Defendant's legal conclusion that the steps taken by Mozeo's clients to send certain text messages constitute "human intervention," much less "considerable human intervention" under the TCPA. Furthermore, Plaintiffs dispute that the declarant, Gregory Lisnyczyj, is an expert qualified to opine on an ultimate issue of fact regarding whether Defendant's text messages were sent without human intervention. Plaintiffs also dispute that a "human being" must perform all of the steps outlined above in order for a Mozeo client to send *any* text message. As stated in response to Defendant's Proposed Statement No. 12, above, the welcome messages at issue in this case were sent automatically without any human being having to select the message recipients, "press a button," or "schedule" the text messages. (Ex. D at 33:15–34:2, 38:24–39:3; Ex. B at 46:11–25, 47:2–13, 47:25–48:6; Ex. O at ¶ 25.)

14. Overall, through its Internet-accessible interface, Mozeo's platform operates in a manner similar to email when an individual wishes to create and deliver a message to one or more recipients.

RESPONSE: Plaintiffs dispute that the above statement constitutes a "statement of fact," as opposed to merely an opinion or characterization offered by Defendant. Furthermore, as stated in Plaintiffs' response to Defendant's Proposed Statement Nos. 12 and 13, above, the welcome messages at issue here were not sent in a manner similar to email because the recipients of the message were automatically chosen as part of a continuous and automated process to send welcome text messages to all new customer account records that contained a

7

cellular telephone number. (Ex. D at 33:15–34:2; Ex. B at 46:11–25, 47:2–13, 47:25–48:6.) To the extent that Defendant suggests that an email analogy is appropriate, the system at issue operated more similarly to an automated spam email program that automatically sends spam email advertisements to thousands of newly created email accounts.

15. The telephone numbers in a client's contact list – including A&M's contact list – are not, and never have been, telephone numbers provided, generated, or created by Mozeo in any fashion. Those telephone numbers are provided only by Mozeo's clients (or, in limited circumstances, the client's customers).

RESPONSE: Plaintiffs do not dispute that the telephone numbers in A&M's contact list were not provided, generated, or created by Mozeo. Plaintiffs lack information sufficient to determine the veracity of whether telephone numbers relating to other clients were ever provided, generated, or created by Mozeo, but Plaintiffs nonetheless are without a basis to dispute this statement at this time.

16. All text messages sent by Mozeo's clients include instructions to opt-out of receiving further text messages. Specifically, each such text message instructs the recipient to reply to the text message with the word "STOP" if they wish to opt-out of receiving further text messages. Such opt-out requests are dealt with immediately and automatically by removing the requesting telephone number from the corresponding Mozeo client's contact list.

RESPONSE: Undisputed.

17. At no time has Mozeo's platform had the capacity to generate the telephone numbers to which Mozeo's clients can send text messages. This includes, without limitation, the capacity to generate telephone numbers sequentially or randomly. Mozeo's platform does not include a random number generator or sequential number generator, nor has it ever included

such features. Mozeo's platform includes no feature that would permit use of a plug-in, application ("app"), or similar third-party technology, that would allow the generation of sequential or random telephone numbers.

RESPONSE: Plaintiffs dispute that the declarant, Gregory Lisnyczyj, is an expert qualified to opine on an ultimate issue of fact regarding whether Defendant's text messages were sent through a system that, under the TCPA, had the "capacity" to generate "random or sequential" numbers. Plaintiffs also dispute that Mozeo's platform does not include a random or sequential number generator. Mozeo's website clearly states that its platform incorporates a "Text-to-Win" feature that allows Mozeo's customers to "pick random winners" by randomly generating a number out of a list of stored numbers, and then dialing that number to send it a text message. (Ex. G; Ex. H.) Furthermore, according to Plaintiffs' expert, Randall Snyder, who has over "30 years of experience in telecommunications network and system architecture" (Ex. E at ¶¶ 4–7), the "random winner" functionality operates using a random number generator. (Ex. E at ¶¶ 11, 22–26, 40, 42.) Plaintiffs also dispute that Mozeo's platform would not permit the use of a plug-in app. that would generate random or sequential telephone numbers given the fact that Mozeo's platform *currently* incorporates a feature that relies on random number generation in order to send text messages. (Ex. G; Ex. H; Ex. E at ¶¶ 11, 25, 26, 40, 42.) According to Plaintiffs' expert, the "random winner" functionality that is built into Mozeo's platform could easily be utilized to dial telephone numbers that are entirely randomly generated. (Ex. E at ¶¶ 10, 26, 42–43.)

18. There are no settings or features of the Mozeo platform that can be changed or modified to it the capacity to produce telephone numbers randomly or sequentially. Such a capacity would have to be written into the Mozeo code from scratch; that is, nothing short of the

9

purposeful and intentional creation of code directed to the generation of random or sequential telephone numbers would provide such capacity to the Mozeo platform. Mozeo's platform would have to be substantially modified to add new features that would permit using a random or sequential number generator to store or produce telephone numbers. Such modifications would require an experienced computer programmer to wexhibitrite source code for the new features and further source code to incorporate those features into the existing Mozeo platform. Such modifications would likely take at least several months of development and testing (and could not be accomplished without Mozeo's cooperation, i.e., access to Mozeo's protected systems and proprietary code). Any such modifications would fundamentally alter the nature of Mozeo's platform, either as it exists today or as it has existed in any time since Mozeo's inception in 2007. Mozeo has never contemplated making such fundamental changes to its platform – which would similarly fundamentally alter its business model – nor does Mozeo have any plans to make such fundamental changes at any future point in time.

RESPONSE: Plaintiffs dispute that there no settings or features of the Mozeo platform that can be changed or modified to give it the capacity to produce telephone numbers randomly or sequentially. (Ex. G; Ex. H; Ex. E at ¶¶ 10, 25, 26, 40, 42–43.) As shown on Mozeo's website, Mozeo's platform presently incorporates a feature that allows its client to dial random numbers from a given list. (Ex. G; Ex. H.) As explained by Plaintiffs' expert, this feature can be easily modified to make Mozeo's platform dial a list of randomly generated numbers. (Ex. E at ¶¶ 10, 26, 40, 42–43.) Plaintiffs do not dispute that in order for Mozeo's platform to produce random or sequentially generated telephone numbers Mozeo would have to intentionally modify its code. However, given that Mozeo's system currently possesses the software code necessary to randomly choose telephone numbers to be dialed, and then dial such telephone numbers,

Plaintiffs dispute that the capacity to dial randomly generated numbers would have to be written "from scratch." Plaintiffs also do not dispute that modifying Mozeo's platform to generate random or sequential numbers would require a computer programmer to write some new source code for such features. Nor do Plaintiffs dispute that modifying Mozeo's platform to generate such numbers would require its cooperation and access to its systems and code. However, Plaintiffs dispute Mozeo's estimate that such modification would take "several months" to implement given the relative ease of making such modification and the fact that Mozeo's platform already utilizes the source code necessary to allow for such functionality. (Ex. E at ¶¶ 10, 22–26, 40, 42–43.) Nor is Mozeo's estimate that such modifications would take "several months" in any way a reasonable metric for determining the difficulty of implementing such modifications. Plaintiffs also dispute Mozeo's purely opinion statement that such modifications would "fundamentally alter the nature of Mozeo's platform." The nature of Mozeo's platform is to allow its clients to send text message advertisements to thousands of current and potential customers. Providing the ability to send text message advertisements to thousands of sequentially or randomly generated cell phone numbers is not in any way contradictory to the nature and purpose of Mozeo's platform as a means for its clients to deliver text message advertisements to as many potential customers as they would like.

19. Mozeo has systems to analyze whether the telephone numbers to which its clients send messages have been sequentially or randomly generated; Mozeo uses these systems to prevent messages from being sent to such numbers. Mozeo's systems similarly have security that prevents customers from-re-writing Mozeo's code or fundamentally altering the functions of the Mozeo platform.

RESPONSE: Undisputed.

20. Mozeo's platform does not make or dial voice telephone calls, nor has it ever had such capability. Mozeo's platform cannot be used to direct any telephone call to a live operator. The use of Mozeo's platform cannot result in a dead-air call or a call that is hung up when answered. Mozeo's platform does not predict a time when a recipient selected by a Mozeo client will see/receive a text message that the client sends to that recipient.

RESPONSE: Undisputed.

## PLAINTIFFS' STATEMENT OF ADDITIONAL UNDISPUTED FACTS REQUIRING DENIAL OF DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT

Plaintiffs Frieda Zeidel and Carla Serrano, by their undersigned counsel, hereby submit this Statement of Additional Facts Requiring Denial of Defendant's Second Motion for Summary Judgment. All exhibits referenced herein are the same exhibits as listed in the above index.

1. Defendant sent both Plaintiffs Frieda Zeidel and Carla Serrano the same text message advertisement containing the following message:

> Welcome to VIP status! Your gift: 20% OFF ur purch. Exclusive
> offers 2 come. Cannot combine RC 427. Expires in 30 days.
> www.Mandee.com Rply STOP to stop.

(Ex. P at ¶¶ 16, 18.)

2. Defendant sent two types of text message advertisements to customers whose telephone numbers were entered into its Customer Maintenance database: text message advertisements that contained a "welcome" message such as the one received by Plaintiffs, and scheduled text message advertisements that did not contain a "welcome" message. (Ex. F at YM 0090, YM 0101; Ex. I at 1–9, 10–20, 21–63; Ex. B at 42:24–44:6, 45:24–46:10, 46:11–47:13, 47:25–48:6; Ex. D at 33:9–34:2; Ex. K at 15:20–16:7.)

3. To send scheduled text message advertisements that did not contain a "welcome" message, Defendant had to complete the "multi-step process" outlined by Defendant in its Statement of Undisputed Fact No. 12. (Ex. N at ¶ 9.)

4. Text message advertisements that contained a "welcome" message were automatically sent to the cellular telephone numbers of customers whose data was entered for the first time into Defendant's Customer Maintenance database as a result of the customer providing their cellular telephone number to a Mandee's sales associate in-store at the point of sale. (Ex. B at 20:16–23, 21:19–22:18, 22:21–23:4, 46:18–48:6; Ex. D at 38:17–39:3; Ex. K at 26:3–28:8; Ex. L at ¶ 4.)

5. Beginning at least as early as May 2013, and ending sometime in March 2014, Defendant had a written policy that instructed all sales associates to collect the cellular telephone numbers of customers at the point of sale for marketing purposes. (Ex. A at 18:22–19:9, 39:10–14; Ex. K at 26:3–11, 28:3–8; Ex. Q.)

6. Plaintiffs Zeidel and Serrano both provided their cellular telephone numbers to a Mandee's sales associate in-store. (Ex. C at 23:4–7; Ex. J at ¶ 5; Ex. L at ¶ 10.)

7. When a customer provided their cellular telephone number to a Mandee's sales associate in-store the sales associate entered the number into the electronic cash register. (Ex. D at 44:21–45:7, 45:24–46:9; Ex. B at 21:19–22:2, 22:21–23:4, 27:14–21; Ex. M.)

8. Once a customer's cellular telephone number was entered for the first time into the electronic cash register, the "Mobile Opt-In" field automatically "default[s]" to show "yes" without the sales associate having to change the field entry from "unknown." (Ex. B at 26:17–27:9. 56:10–14.)

9. Once a customer's cellular telephone number was entered for the first time into the electronic cash register, it was automatically uploaded into Defendant's Customer Maintenance database without any person having to manually upload the telephone number into the database. (Ex. B at 21:19–22:11, 27:14–21; Ex. O at ¶ 22.)

10. Once a customer's cellular telephone number was uploaded for the first time into Defendant's Customer Maintenance database, it was then automatically uploaded into Mozeo's database, and Mozeo immediately thereafter automatically sent a "welcome" message to the telephone number. (Ex. D at 33:15–23, 38:17–39:3; Ex. B at 46:18–47:13, 47:25–48:6; Ex. O at ¶ 25; Ex. E at ¶¶ 30, 36, 41, 44)

11. There was no employee of Defendant that scheduled or controlled when "welcome" messages were sent by Mozeo. (Ex. D at 33:15–34:2, 38:24–39:3; Ex. B at 46:18–47:13, 47:25–48:6.)

12. There was no Mozeo employee that scheduled or controlled when "welcome" messages were sent by Mozeo. (Ex. N at ¶ 14.)

13. There was no employee of Defendant that reviewed or finalized the "welcome" messages before they were sent. (Ex. D at 33:15–23, 38:24–39:3; Ex. B at 46:18–47:13, 47:25–48:6.)

14. There was no Mozeo employee that reviewed or finalized the "welcome" messages before they were sent. (Ex. N at ¶ 14.)

15. "Welcome" messages promoting Defendant's Mandee's stores were sent by Mozeo's platform every single day, for 272 consecutive days, from June 1, 2013 to February 28, 2014. (*See* Declaration of Eugene Y. Turin, attached as <u>Exhibit 2</u> to Plaintiffs' Memorandum of Law in Opposition to Defendant's Second Motion for Summary, at ¶ 18.)

16. Mozeo's platform that was used to send the "welcome" text messages sent to Plaintiffs incorporates a "Text-to-Win" feature that randomly chooses a telephone number from a list of telephone numbers and "immediate[ly]" sends a text message notification to the randomly chosen number. (Ex. G; Ex. H.)

17. Mozeo's platform's "Text-to-Win" feature operates by first determining the total number of telephone numbers in the stored list of numbers from which the "winner" will be chosen. (Ex. E at ¶ 24.) Mozeo's platform then runs a program that generates a random number whose value falls between "1" and the number corresponding to the total number of telephone numbers stored. (Ex. E at ¶ 24.) Once the random number is generated, Mozeo's platform dials the telephone number whose numerical index value corresponds to the randomly generated number. (Ex. E at ¶ 24.)

18. It would require minimal modification of Mozeo's platform to utilize the software code of the "Text-to-Win" feature to make it dial randomly generated numbers. (Ex. E at ¶¶ 11, 25–26, 42–43.)

Dated: June 2, 2016

Respectfully submitted,

FRIEDA ZEIDEL and CARLA SERRANO, individually and on behalf of a Class of similarly situated individuals

By: /s/ Eugene Y. Turin
      One of Plaintiffs' Attorneys

Myles McGuire
Evan M. Meyers
Eugene Y. Turin
Paul Geske
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, IL 60601
Tel: (312) 893-7002

15

mmcguire@mcgpc.com
emeyers@mcgpc.com
eturin@mcgpc.com
pgeske@mcgpc.com

*Attorneys for Plaintiffs and the Putative Class*

**CERTIFICATE OF SERVICE**

I, Eugene Y. Turin, hereby certify that on June 2, 2016, I electronically filed the foregoing *Plaintiffs' Response to Defendant's Proposed Statement of Undisputed Material Facts in Support of Defendant's Second Motion for Summary Judgment and Plaintiffs' Statement of Additional Facts Requiring Denial of Summary Judgment* with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to the following counsel of record:

Hal R. Morris
Elizabeth A. Thompson
ARNSTEIN & LEHR LLP
120 South Riverside Plaza
Chicago, IL 60606
hrmorris@arnstein.com
eathompson@arnstein.com

Christopher A. Mitchell
Dickinson Wright, PLLC
350 S. Main Street
Suite 300
Ann Arbor, MI 48104
cmitchell@dickinsonwright.com

/s/ Eugene Y. Turin