**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| CARLA SERRANO, individually and on behalf of a class of similarly situated individuals, | ) ) ) | |
| | ) | No. 13-cv-06989 |
| *Plaintiff*, | ) ) | |
| v. | ) ) | Magistrate Daniel G. Martin |
| | ) | |
| A&M (2015), LLC, | ) ) | |
| *Defendant*. | ) | |

**PLAINTIFF'S *UNOPPOSED* MOTION FOR APPROVAL OF
ATTORNEYS' FEES, EXPENSES, & INCENTIVE AWARD**

Myles McGuire
Evan M. Meyers
Eugene Y. Turin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Fl.
Chicago, Illinois 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
eturin@mcgpc.com

*Counsel for Plaintiff and Class Counsel*

## TABLE OF CONTENTS

I.     **INTRODUCTION** .................................................................................................1

II.    **BACKGROUND** ...................................................................................................3

    A.  The Telephone Consumer Protection Act .................................................2

    B.  Factual Background and Litigation ...........................................................4

III.   **SETTLEMENT TERMS** ......................................................................................5

    A.  Monetary And Non-Monetary Relief To The Settlement Class Members ............6

    B.  Pursuant To The Settlement Agreement's Notice Plan, Direct Notice Has Been Sent To Thousands of Individuals ...........................8

IV.   **ARGUMENT** ........................................................................................................9

    A.  The Court Should Award Class Counsel's Requested Attorneys' Fees.................9

    B.  The Court Should Also Award Class Counsel's Reasonable Litigation Expenses Incurred In Prosecuting This Litigation ...................................15

    C.  The Agreed-Upon Incentive Award For Plaintiff Is Reasonable And Should Be Approved ...............................................................................16

V.    **CONCLUSION** ..................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott v. Lockheed Martin Corp.*,
No. 06–cv–701, 2015 WL 4398475 (S.D. Ill. 2015) ..............................................10

*ACA Int'l v. FCC*,
No. 15-1211 (D.C. Cir.) .......................................................................................14

*Beesley v. Int'l Paper Co.*,
No. 06-cv-703, 2014 WL 375432 (S.D. Ill. 2014).........................................14, 15

*Blum v. Stenson*,
465 U.S. 886 (1984)............................................................................................10

*Campbell-Ewald Co. v. Gomez*,
136 S. Ct. 663 (2016).............................................................................................3

*City of Greenville v. Syngenta Crop Prot.*,
904 F. Supp. 2d 902 (S.D. Ill. 2012)...................................................................15

*Civil Rights Educ. and Enf't Ctr. v. Ashford Hosp. Trust, Inc.*,
No. 15-cv-00216, 2016 WL 1177950 (N.D. Cal. 2016).......................................11

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) ...............................................................................9

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
No. 11-cv-4462, 2015 WL 1399367 (N.D. Ill. 2015) ...........................................17

*Florin v. Nationsbank of Georgia, N.A.*,
34 F.3d 560 (7th Cir. 1994) ..............................................................................9, 12

*Florin v. Nationsbank of Ga., N.A.*,
60 F.3d 1245 (7th Cir. 1995) ...............................................................................12

*Gastineau v. Wright*,
592 F.3d 747 (7th Cir. 2010) ...............................................................................10

*G.F. v. Contra Costa County*,
No. 13-cv-03667-MEJ, 2015 WL 7571789 (N.D. Cal. 2015) ...............................11

*GMAC Mortg. Corp. of Pa. v. Stapleton*,
236 Ill. App. 3d 486 (1st Dist. 1992) ...................................................................16

*Hall v. Cole*,
   412 U.S. 1 (1973) ........................................................................................................14

*Harman v. Lyphomed, Inc.*,
   945 F.2d 969 (7th Cir. 1991) .....................................................................................13

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ...................................................................................................10

*In re Cont'l Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992) ...............................................................................12, 15

*In re: Synthroid Mktg. Litig.*,
   264 F.3d 712 (7th Cir. 2001) .....................................................................................15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. M-07-1827-SI, MDL No. 1827, 2013 WL 1365900 (N.D. Cal. 2013)...........................11

*Jeffboat, LLC v. Director, Office of Workers' Comp. Programs*,
   553 F.3d 487 (7th Cir. 2009) .....................................................................................10

*Lozano v. Twentieth Century Fox*,
   No. 09-cv-6344, Dkt. 65 (N.D. Ill.) ...........................................................................18

*Montanez v. Simon*,
   755 F.3d 547 (7th Cir. 2014) .....................................................................................10

*Mims v. Arrow Fin. Servs. LLC*,
   132 S. Ct. 740 (2012).....................................................................................................3

*Murray et al v. Bill Me Later, Inc.*,
   No. 12-cv-04789, Dkt. 78 (N.D. Ill.) .........................................................................18

*People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*,
   90 F.3d 1307 (7th Cir. 1996) .....................................................................................11

*Reid v. Unilever U.S., Inc.*,
   No. 12-cv-6058, 2015 WL 3653318 (N.D. Ill. 2015) ...............................................11

*Satterfield v. Simon & Schuster*,
   No. 06-cv-2893, Dkt. 131 (N.D. Cal.) .......................................................................17

*Schulte v. Fifth Third Bank*,
   805 F.Supp. 2d 560 (N.D. Ill. 2011) .........................................................................17

*Spano v. Boeing Co.*,
   No. 06-cv-743, 2016 WL 3791123 (S.D. Ill. 2016)...................................10, 13, 16

*Spicer v. Chicago Bd. Options Exch., Inc.*,
    844 F. Supp. 1226 (N.D. Ill. 1993) ........................................................................15

*Standard Iron Works v. ArcelorMittal*,
    No. 08-cv-5214, 2014 WL 7781572 (N.D. Ill. 2014) ................................................13

*Wright v. Nationstar Mortage LLC*,
    No. 14-cv-10457, 2016 WL 4505169 (N.D. Ill. 2016) ................................................9

**Statutes**

47 U.S.C. §§ 227 *et seq.*.......................................................................... *passim*

47 C.F.R. § 64.1200 *et seq.* ........................................................................4

**Other Authorities**

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection
    Act of 1991, FCC Report and Order, CG Docket No. 02-278*,
    18 FCC Rcd. 14014 (July 3, 2003) ........................................................................3

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection
    Act of 1991, FCC Report and Order, CG Docket No. 02-278*,
    27 FCC Rcd. 1830 (Feb. 15, 2012) ........................................................................4

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection
    Act of 1991, FCC Declaratory Ruling, CG Dkt. No. 02-278*,
    30 FCC Rcd. 7961 (July 10, 2015) ........................................................................3

Manual for Complex Litigation, Fourth, § 21.71 (2004) ................................................14

S. Rep. No. 102-178 (1991) ........................................................................3

Pub. L. No. 102-243, 105 Stat. 2394 (1991) ........................................................................3

## I.   __INTRODUCTION__

This Court preliminarily approved the Parties' class action Settlement,[1] bringing to a close what has now been *4½ years* of contentious litigation that has included multiple dispositive motions, discovery motions, and the adversarial certification of a class. Notice has been distributed and Settlement Class Members have begun to claim their Merchandise Vouchers and submit claims for Cash Awards. In advance of the Final Approval Hearing, Plaintiff Carla Serrano now moves for approval of the agreed-upon Incentive Award and an award of attorneys' fees and expenses for Class Counsel.

The Class Action Settlement that Class Counsel have achieved in this case is an exceptional result for Settlement Class Members, as it provides each Class Member with a $15 Merchandise Voucher that can be picked up at any of Defendant A&M (2015), LLC's Mandee stores and used to purchase any of hundreds of items without spending any of their own money. Alternatively, Class Members are provided with the option of obtaining a $10 Cash Award if they would prefer cash to a Merchandise Voucher. In addition to the financial benefit obtained by Class Counsel for the Settlement Class Members, the Settlement also includes terms that provide significant non-monetary relief designed to minimize or eliminate the allegedly unlawful text messaging activity at issue in this case.

Notice of the Settlement through Direct Notice and Publication Notice commenced on December 18, 2017, and has successfully reached thousands of potential Settlement Class Members. To date, the Settlement Administrator has sent Direct Notice by email to nearly 12,000 potential Settlement Class Members, and Publication Notice has included in-store signage at Mandee stores, online banner advertisements specifically targeting individuals who

---

[1] Unless otherwise indicated, capitalized terms have the same meaning as those terms are used in the Settlement Agreement, which is attached hereto as Exhibit 1.

are likely Mandee store customers, and a Settlement Website. As of the filing of this Motion, Merchandise Vouchers are already being distributed to Class Members on a daily basis, over 1,361 cash claims have been made, and, most importantly, no Settlement Class Member has objected to the proposed Settlement.

With this Motion, Class Counsel request that the Court award them fees and expenses of $475,000, which is *less* than their total lodestar after 4½ years of sustained litigation. As explained in detail below, Class Counsel's requested fee award, which requires no multiplier to their lodestar, is justified given the exceptional monetary and non-monetary relief provided under the Settlement, is consistent with Seventh Circuit law and fee awards granted in similar class action settlements in the Northern District of Illinois, and is also reasonable given the time and costs Class Counsel have committed to resolving this litigation for the benefit of the Settlement Class Members.

Both Class Counsel and the Class Representative, Ms. Serrano, devoted significant time and effort to the prosecution of the Settlement Class Members' claims, and their efforts have yielded an extraordinary benefit for thousands of consumers nationwide. The requested attorneys' fees and costs and Incentive Award are amply justified in light of the investment, risks, and excellent results obtained for the Settlement Class Members. Plaintiff and Class Counsel respectfully request that the Court approve attorneys' fees and costs of $475,000, and the agreed-upon Incentive Award of $1,000 for Plaintiff as Class Representative.

## II.   BACKGROUND

### A.   The Telephone Consumer Protection Act.

Seeking to protect consumers against a growing flood of invasive and unwanted automated calls, Congress enacted the Telephone Consumer Protection Act to "ban all autodialed

calls . . . [to] cellular phones . . . unless the called party consents to receiving them, or unless the calls are made for emergency purposes[.]" S. Rep. No. 102-178, at 6 (1991); *see also Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 742 (2012). Based on an extensive legislative record, Congress found that consumers "consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy," and that "[b]anning such automated or prerecorded calls . . . except when the receiving party consents to receiving the call . . . is the only effective means of protecting telephone consumers[.]" Pub. L. No. 102-243, § 2(10), 2(12), 105 Stat. 2394 (1991); *Mims*, 132 S. Ct. at 745 ("Congress reported, '[m]any consumers are outraged over the proliferation of intrusive. . .  [telemarketing] calls[.]").

The problems that Congress sought to address with the TCPA have grown worse in recent years as cellphones have become ubiquitous, with many people carrying their cellphone on them at nearly all times. Unwanted text messages reach into individuals' pockets and can create an interruption at any moment—at home, at work, in the car, on vacation, or during private moments. *Id*. Despite the TCPA making it unlawful to place unauthorized automated telephone calls to cellular telephone numbers, including automated text messages,[2] the Federal Communications Commission ("FCC") still reports that "[m]onth after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the [FCC]." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, *FCC Declaratory Ruling*, *CG Dkt. No. 02-278*, 30 FCC Rcd. 7961, 7964 ¶ 1 (July 10, 2015) ("2015 FCC Ruling"). Accordingly, pursuant to the FCC's rulemaking authority, in 2012 the FCC released another set of regulations that further restricted

---

[2] Text messages constitute calls under the TCPA. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, *FCC Report and Order, CG Docket No. 02-278*, 18 FCC Rcd. 14014, 14115 ¶ 165 (July 3, 2003); *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016), *as revised* (Feb. 9, 2016) ("A text message to a cellular telephone . . . qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)").

the ability to send automated calls containing an advertisement only to individuals who provided their prior express *written* consent. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC Report and Order, CG Docket No. 02-278*, 27 FCC Rcd. 1830, 1838 ¶ 20 (Feb. 15, 2012).

**B.    Factual Background and Litigation.**

Defendant operates a chain of women's retail clothing stores, including stores under the "Mandee" brand, throughout the country. In an effort to promote its retail apparel products, Defendant had a practice of collecting the cellular phone numbers of customers who visited Mandee retail stores, and then transmitting automated text message advertisements *en masse* to thousands of those cell phone numbers. Specifically, customers' telephone numbers were collected orally at the point of sale and then automatically uploaded into Mandee's "customer maintenance database," after which Mandee's customers received a "welcome" text message that welcomed them to "VIP status." The welcome messages contained an advertisement promoting Defendant's Mandee retail stores, and each of the text messages was sent without the prior express written consent of the called party to receive such messages. From October 16, 2013, onward, the absence of such express prior written consent was in violation of the TCPA, as interpreted by the FCC. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2).

On December 31, 2013, Plaintiff Serrano received such a "welcome" text message from Defendant, which stated as follows:

> Welcome to VIP status! Your gift: 20% OFF ur purch. Exclusive offers 2 come. Cannot combine RC 427 Expires in 30 days. www.Mandee.com Rply STOP to stop.

(2nd Amend. Compl., Dkt. 82, at ¶ 18.) As with the other Settlement Class Members, Plaintiff Serrano did not provide prior express written consent to receive the message.[3]

After Plaintiff Zeidel filed the initial class action complaint in this matter in August 2013, Defendant responded by filing an early motion for summary judgment. (Dkt. 31.) Because of the procedural posture of Defendant's motion, Class Counsel had to undertake significant discovery in order to prepare Plaintiff's opposition, including taking multiple depositions in Chicago and New York and serving written discovery. Ultimately, however, after being fully briefed, Defendant's motion was denied by Judge Dow in April 2015. (Dkt. 55.) Subsequently, Class Counsel engaged in significant further discovery efforts in preparation for filing a motion for class certification, including conducting two more depositions in New York. In advance of filing the motion for class certification, Plaintiff Serrano was added as an additional plaintiff on January 26, 2016. (Dkt. 82.)

On April 12, 2016, Defendant filed its second motion for summary judgment (Dkts. 93, 95), the same day on which Plaintiff Serrano filed her motion for class certification. (Dkt. 99.) On March 30, 2017, Judge Dow entered an Order denying Defendant's motion for summary judgment on the grounds that there was a triable issue of fact as to whether Defendant utilized an Automatic Telephone Dialing System to send the text messages at issue, as would be required for Defendant's conduct to have been in violation of the TCPA. (Dkt. 137.) Judge Dow's March 30, 2017 Order also granted Plaintiff's motion for class certification, appointed Plaintiff Serrano as

---

[3] Plaintiff Frieda Zeidel also received a substantially identical "welcome" text message on June 5, 2013. But because the message to Ms. Zeidel was sent prior to October 16, 2013, *written* consent was not required. As such, although Ms. Zeidel originally filed her class action suit in August 2013 based on the allegation that she did not provide consent to receive the text message, she is not a member of the class certified by Judge Dow, nor is she a member of the Settlement Class set forth in the Settlement Agreement or the Court's Preliminary Approval Order—individuals who received a "welcome" text message *on or after* October 16, 2013. Ms. Zeidel was not a party to the Settlement Agreement, and her case has now been separately dismissed. (Dkt. 161.)

Class Representative and attorneys Evan M. Meyers and Eugene Y. Turin of McGuire Law, P.C. as Class Counsel, and certified a Class, the definition of which was slightly modified as part of the Parties' Settlement Agreement and in the Court's Preliminary Approval Order as follows:

> All individuals who received a text message relating to Mandee stores anytime from October 16, 2013 through December 31, 2014 and containing the language "Welcome to VIP status!".

(Prelim. Appvl. Order, Dkt. 155, at ¶ 5.) Between October 17, 2013 and December 31, 2014 Defendant sent the "Welcome Messages" at issue to over 79,000 unique telephone numbers. (Dkt. 137 at 3.)

In light of the potential inability of Defendant to satisfy any judgment on the merits, and in order to avoid the time and expense involved in a trial on the merits and/or Defendant's filing of a motion to stay, counsel for the Parties subsequently engaged in multiple settlement negotiations, including a settlement conference with this Court that took place on July 12, 2017. That settlement conference resulted in agreement on a general settlement framework that counsel for the Parties further discussed in detail in the following months and that ultimately resulted in the class action Settlement Agreement that the Court preliminarily approved on November 6, 2017. (Dkt. 155.)

III.  **THE SETTLEMENT**

A.  **Monetary And Non-Monetary Relief To The Settlement Class Members.**

Class Counsel's prosecution of Plaintiff's claim and this litigation has culminated in a Class Action Settlement that provides meaningful monetary relief to the Settlement Class Members, as well as significant prospective relief through changes to Defendant's practices that have already taken place as a result of this litigation.

Under the terms of the Settlement, Class Members have the option of receiving (i) merchandise credit worth up to $15 ("Merchandise Voucher"), or (ii) $10 in cash ("Cash

Award"). Class Members will have (and have now already started to have) their Merchandise Vouchers made available to them at any Mandee store upon identification of their name, residential address, and the telephone number at which they received a Welcome Text Message. The Merchandise Vouchers will be activated at the time of being distributed to the Class Members and can be used at any time after final approval is entered in this case. To use a Merchandise Voucher, an individual need only present the Merchandise Voucher to a Mandee store cashier at the time of purchase.

The Merchandise Vouchers have a maximum value of $15 and can be used for any in-store purchases at any Mandee stores, including any sale items, and can be used in conjunction with any other coupons or promotions, as well as cash. The Merchandise Vouchers will have no expiration, will be fully transferable, and will not require any minimum purchase. Importantly, because there are hundreds of items available at Mandee stores for less than $15, Class Members will *not* be required to spend *any* of their own money in order to use their Merchandise Voucher.

Although Plaintiff expects that the majority of Settlement Class Members will ultimately choose the $15 Merchandise Voucher – given that they are all previous Mandee store customers – Class Members will also have the option of obtaining $10 cash instead of the Merchandise Voucher. To obtain the Cash Award instead of the Merchandise Voucher, Class Members need only submit a Claim Form either online (via the Settlement Website) or in hard copy by U.S. Mail to the Settlement Administrator and request the $10 Cash Award. Class Members who do not timely submit a valid Claim Form seeking the $10 Cash Award by the applicable deadline will not be eligible to receive the Cash Award, but will remain eligible to receive and redeem their Merchandise Voucher.

In addition to the monetary compensation outlined above, Defendant has also

- 7 -

acknowledged that, as a direct result of this litigation, it ceased sending any and all promotional text messages for a period of time after March 1, 2014. Furthermore, as part of this Settlement, Defendant has agreed to the following changes to its business practices, which will remain in effect indefinitely, or until such time as the legal requirements for sending promotional text messages have been altered so as to relieve Defendant of such obligations:

1. to the extent Defendant seeks to send commercial text messages for the purpose of encouraging the purchase or sale of goods or services, it, as well as its employees, managers, and affiliated entities, is prohibited from sending such text messages, or cooperating with others to send such text messages, using any Automatic Telephone Dialing System as defined by the TCPA, unless each message recipient has given prior express written consent to receive such messages; and

2. to the extent Defendant, either itself or through agreement with any other person or entity, utilizes text message advertising of any kind, it shall obtain (or it shall require any person or entity who collects consumer cell phone numbers to obtain) documented proof of all prior express written consent of consumers to receive text message advertising and shall maintain such documentation for a period of four (4) years after said consent is obtained.

Together, these processes will reduce or eliminate text message advertisements sent by Defendant without prior express written consent, and will thus benefit the Settlement Class Members and the public at large.

**B.      Pursuant To The Settlement Agreement's Notice Plan, Direct Notice Has Been Sent To Thousands of Individuals.**

Under the Settlement Agreement's Notice Plan, which has already gone into effect, Direct Notice has been provided by email to all Class Members for whom Defendant has email addresses in its records—approximately 12,000 individuals. (*See* Declaration of Myles McGuire, attached hereto as Exhibit 2, ¶ 28.) In addition, Publication Notice has commenced and has included in-store signage at all Mandee stores informing customers of this Settlement and the ability to obtain Merchandise Vouchers or cash, as well as online banner advertisements distributed on 24 different major online ad networks that have specifically targeted geographic locations where Mandee stores, and thus Class Members, are located and which have resulted in over 350,000 impressions. (*Id.*) The Settlement Website is online, and to date, there have already been thousands of unique visits to the website, with 1,361 cash claims and no objections filed. (*Id.*)

**IV.      ARGUMENT**

**A.      The Court Should Award Class Counsel's Requested Attorneys' Fees.**

Federal Rule of Civil Procedure 23 provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Seventh Circuit recognizes "two approaches used to calculate attorneys' fees: the lodestar method . . . and the percentage-of-recovery method . . . ." *Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 WL 4505169, at *14 (N.D. Ill. Aug. 29, 2016) (citing *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 562 (7th Cir. 1994) (hereinafter "*Florin I*")). Generally, "a district judge has discretion to use either method, depending on the particular circumstances of the case." *Cook v. Niedert*, 142 F.3d 1004,

- 9 -

1010 (7th Cir. 1998). In this case, the reasonableness of Class Counsel's fee request is abundantly clear under the lodestar method, as the fee award being requested is *less* than Class Counsel's *actual* lodestar.

Under the lodestar method, courts consider the number of hours expended by class counsel, class counsel's hourly rate, and the level of risk taken on by class counsel. *See Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010). The first step in determining the amount of attorneys' fees to award is to calculate the base rate by "multiplying a reasonable hourly rate by the number of hours reasonably expended." *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433–37 (1983)). The best evidence of a reasonable hourly rate is "the amount the attorney actually bills for similar work," or "if that rate can't be determined, then the district court may rely on evidence of rates charged by similarly experienced attorneys in the community and evidence of rates set for the attorney in similar cases." *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014); *see also Jeffboat LLC v. Director, Office of Workers' Comp. Programs*, 553 F.3d 487, 489 (7th Cir. 2009) (holding that reasonable hourly rate should be in line with the prevailing rate in the "community for similar services by lawyers of reasonably comparable skill, experience and reputation.") (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

Here, as detailed in the attached Declaration of Myles McGuire, Class Counsel's rates are comparable to those charged by attorneys with similar backgrounds and experience, and are commensurate with judicially approved rates in class actions in this District. (McGuire Decl. ¶¶ 24–25.) *See Spano v. Boeing Co.*, No. 06-cv-743, 2016 WL 3791123, at *4 (S.D. Ill. Mar. 31, 2016) (approving class counsel's rates of $850 per hour for attorneys with 15–24 years of experience; $612 per hour for attorneys with 5–14 years of experience; and $460 per hour for attorneys with 2–4 years of experience); *Abbott v. Lockheed Martin Corp.*, No. 06–cv–701, 2015

WL 4398475, at *3 (S.D. Ill. July 17, 2015) (approving similar rates); *Reid v. Unilever U.S., Inc.*, No. 12-cv-6058, 2015 WL 3653318, at *16 (N.D. Ill. June 10, 2015) (approving $650 per hour for a partner representing plaintiffs in consumer class actions); *Civil Rights Educ. and Enf't Ctr. v. Ashford Hosp. Trust, Inc.*, No. 15-cv-00216, 2016 WL 1177950, at *5 (N.D. Cal. Mar. 22, 2016) (requested hourly rates of $900, $750, $550, $500, $430, and $360 for attorneys and $225 for paralegals were "in line with the market rates charged by attorneys and paralegals of similar experience, skill, and expertise practicing in the Northern District of California"); *G.F. v. Contra Costa County*, No. 13-cv-03667-MEJ, 2015 WL 7571789, at *14 (N.D. Cal. Nov. 25, 2015) (hourly rates between $175 per hour and $975 per hour, which included "an hourly rate of $845-$975 for two of the most senior and experienced litigators," were "in line with the overall range of market rates for attorneys and for litigation support staff of similar abilities and experience" in the Northern District of California between 2013 and 2014); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M-07-1827-SI, MDL No. 1827, 2013 WL 1365900, at *9 (N.D. Cal. 2013) (finding individual billing rates up to $1,000 per hour reasonable for the lead class counsel in an antitrust case). Class Counsel's rates are also justified by their experience and expertise in litigating class actions, including many cases involving consumer protection, consumer privacy, and TCPA violations in particular. (McGuire Decl. ¶¶ 6–12, 24.) Further, numerous state and federal courts, including courts in this District, have previously approved Class Counsel's then-current hourly rates as reasonable. (*Id.* ¶ 24.) The fact that many other courts have approved Class Counsel's hourly rates further supports the rates' reasonableness in the Chicago market. *See People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1312 (7th Cir. 1996) ("rates awarded in similar cases are clearly evidence of an attorney's market rate").

The number of hours Class Counsel worked is also reasonable given the length of the litigation (4½ years, since Plaintiff Zeidel filed her original complaint in July 2013), the complexity of the case (involving two motions for summary judgment, a motion to dismiss, a contested motion for class certification, discovery motion practice, and expert discovery), and the excellent result for the Settlement Class Members, particularly in light of Defendant's potential inability to satisfy a judgment in the event of an adverse result at trial on the merits.

As set forth in the McGuire Declaration, Class Counsel have logged 962.2 hours in uncompensated time in order to achieve the Settlement in this case, and to-date have billed $518,398.50 in attorneys' fees. (McGuire Decl. ¶ 25.) Further, Class Counsel anticipate expending additional time and effort through final approval to respond to inquiries from Settlement Class Members, respond to any potential objectors, prepare final approval papers, review claims for cash awards, and advocate on behalf of the Settlement Class Members in the event a Merchandise Voucher or Cash Award is wrongfully denied. (*Id.* ¶ 26.) Class Counsel conservatively estimate that the lodestar for these additional efforts will be approximately $25,000–$45,000, resulting in a base lodestar of between $543,398.50 and $563,398.50. (*Id.*)

The second step of the lodestar analysis is the application of a risk multiplier to the base amount. If a court decides to apply the lodestar method in a contingency fee case, then "a risk multiplier is not merely available . . . but mandated," because "counsel had no sure source of compensation for their services." *Florin I*, 34 F.3d at 565 (internal quotation omitted). "The need for [a risk multiplier] adjustment is particularly acute in class action suits. The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent." *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569 (7th Cir. 1992). The amount of the multiplier is, like the percentage of the fund approach, "an effort to mimic market forces." *Florin v. Nationsbank*

*of Ga., N.A.*, 60 F.3d 1245, 1247 (7th Cir. 1995) (hereinafter "*Florin II*"); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991) ("Multipliers anywhere between one and four have been approved") (internal citation omitted); *Spano*, 2016 WL 3791123, at *3 ("In risky litigation such as this, lodestar multipliers can be reasonable in a range between 2 and 5") (collecting cases).

In this case, although a lodestar multiplier of at least 2 or 3 would very likely be warranted, no multiplier is even required, as the fees sought by Class Counsel are below their actual lodestar. Thus, the reasonableness of the fee award is made all the more apparent by the fact that Class Counsel are actually seeking less in fees than what they actually incurred, and far less than what they would likely be entitled to based on the application of an otherwise-required multiplier.

The fee award in this case is amply justified by the exceptional relief obtained on behalf of the Settlement Class Members. *See Standard Iron Works v. ArcelorMittal*, No. 08-cv-5214, 2014 WL 7781572, at *2 (N.D. Ill. Oct. 22, 2014) ("Having shouldered these risks, and having achieved outstanding results for the Class, Class Counsel have earned their requested multiplier [of 1.97]"). As stated above, the Settlement Agreement provides approximately 79,000 Class Members up to $15 in merchandise credit at a store they have patronized in the recent past—an aggregate total of nearly $1.2 million in merchandise credit being available. And because there are hundreds of items available at Mandee's Stores for less than $15, Class Members will *not* be required to spend *any* of their own money in order to use their merchandise credit. Alternatively, each Class Member has the choice to submit a claim form to receive $10 in cash.

The non-monetary relief obtained by Class Counsel in this case further justifies the reasonableness of the attorneys' fee being sought here. *See Spano*, 2016 WL 3791123, at *1 ("A court must also consider the overall benefit to the Class, including non-monetary benefits, when

evaluating the fee request. . . . This is important so as to encourage attorneys to obtain meaningful affirmative relief") (citing *Beesley v. Int'l Paper Co.*, No. 06-cv-703, 2014 WL 375432, at *1 (S.D. Ill. Jan 31, 2014)); Manual for Complex Litigation, Fourth, § 21.71, at 337 (2004)); *see also Hall v. Cole*, 412 U.S. 1, 5 n.7 (1973) (stating that awarding attorneys' fees when relief is obtained on behalf of a class "must logically extend, not only to litigation that confers a monetary benefit to others, but also litigation which corrects or prevents an abuse which would be prejudicial to the rights and interests of those others.").

Class Counsel were able to achieve these results solely due to their extensive efforts in prosecuting this litigation through multiple motions for summary judgment and a motion to dismiss; conducting extensive discovery on Defendant's text message practices, including Defendant's customer database and the technology involved in transmitting the text messages and prevailing on a motion to compel discovery; adversarially certifying a class; negotiating the final Settlement Agreement; and preparing all settlement-related documents. (McGuire Decl. ¶ 18.) Class Counsel also faced additional risks, given that Defendant threatened to take the ATDS issue to trial if this case did not settle and/or file a motion to stay, seeking to stay the litigation pending the D.C. Circuit Court of Appeals' ruling on an action pending before it relating to, among other TCPA-related issues, the FCC's interpretation of ATDS. *See ACA Int'l v. FCC*, No. 15-1211 (D.C. Cir.). Further, even if Class Counsel could have prevailed at trial, it was unlikely that Defendant could have satisfied a judgment, which means that there would have been a significant chance that, absence this Settlement, Class Members would have obtained no relief whatsoever.

Given the significant efforts needed to secure the Settlement in this litigation, an award that is actually less than Class Counsel's reasonable lodestar – without the need for a multiplier –

is appropriate to account for the risk inherent in this type of class action and the work performed over a 4½ year period to secure the excellent results obtained on behalf of the Settlement Class.

**B.     The Court Should Also Award Class Counsel's Reasonable Litigation Expenses Incurred In Prosecuting This Litigation.**

Class Counsel also seek compensation of their reasonable expenses incurred in prosecuting this litigation on behalf of the Class, with such expenses included in the $475,000 fee award being sought—an amount, again, that is less than Class Counsel's lodestar even before accounting for such incurred expenses. The Seventh Circuit has held that costs and expenses should be awarded based on the types of "expenses private clients in large class actions (auctions and otherwise) pay." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001); *see also Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1256 (N.D. Ill. 1993) (noting that courts regularly award reimbursement of those expenses that are reasonable and necessarily incurred in the course of litigation). Reimbursable expenses include expert fees; travel; long distance and conference telephone; postage; delivery services; and computerized legal research. *See*, *e.g.*, *In re Cont'l Ill. Sec. Litig.*, 962 F.2d at 570 ("clear error" to deny reimbursement of Lexis and Westlaw expenses because "the arms' length market reimburses" such expenses); *Beesley*, 2014 WL 375432, *3 (granting reimbursement from common fund for litigation expenses including "expert witness costs; computerized research; court reports; travel expense; copy, phone and facsimile expenses and mediation"); *City of Greenville v. Syngenta Crop Prot., Inc.*, 904 F. Supp. 2d 902, 910 (S.D. Ill. 2012) (granting reimbursement of expenses including "experts' fees, other consulting fees, deposition expenses, travel, and photocopying costs").

Here, Class Counsel have incurred $16,855.86 in reimbursable expenses related to filing, discovery, service of subpoenas, the retention of an ATDS expert, travel for multiple out-of-state depositions, case administration, and transcripts. (McGuire Decl. ¶ 27.) Class Counsel's

expenses here all fall into the categories outlined above, and were all reasonably incurred in pursuing this litigation. (McGuire Decl. ¶ 27.) Class Counsel have reviewed the expense records carefully and determined that the expenses were necessary to the successful prosecution of this case. (*Id.*) These expenses were necessary to prosecute a litigation of this size and complexity on behalf of the Settlement Class, and they are typical of expenses regularly awarded in large-scale class actions. Accordingly, Class Counsel request the Court approve as reasonable the incurred expenses, a request which Defendant does not oppose. Such expenses are already included in the $475,000 fee award being sought by Class Counsel. Accordingly, this Court should award a total fee and expense award to Class Counsel of $475,000.00.

### C. The Agreed-Upon Incentive Award For Plaintiff Is Reasonable And Should Be Approved.

Plaintiff also seeks approval of a $1,000 Incentive Award for her role as a Class Representative. The requested $1,000 Incentive Award is reasonable and very modest compared to other incentive awards granted to class representatives in similar TCPA class actions. Because a named plaintiff is essential to any class action, "[i]ncentive awards are justified when necessary to induce individuals to become named representatives." *Spano*, 2016 WL 3791123, at *4 (internal citation omitted) (approving incentive awards of $25,000 and $10,000 for class representatives); *GMAC Mortg. Corp. of Pa. v. Stapleton*, 236 Ill. App. 3d 486, 497 (1st Dist. 1992) (noting that incentive awards "are not atypical in class action cases . . . and serve to encourage the filing of class actions suits.").

Here, Plaintiff's efforts and participation in prosecuting this case justify the $1,000 Incentive Award sought. Even though no award of any sort was promised to Plaintiff prior to the commencement of the litigation or at any time thereafter (McGuire Decl. ¶ 32), Plaintiff nonetheless contributed her time and effort in pursuing her own TCPA claim, as well as in

serving as a representative on behalf of the Settlement Class Members—exhibiting a willingness to participate and undertake the responsibilities and risks attendant with bringing a representative action. (McGuire Decl. ¶¶ 29–31.) Plaintiff participated in the initial investigation of her claim, aided in preparing and reviewing the amended pleadings filed in this action, consulted with Class Counsel on numerous occasions, and provided feedback on a number of other filings including, most importantly, the Settlement Agreement. (*Id.*) Plaintiff has taken it upon herself to regularly check in with Class Counsel about the status of the case and the settlement and has exchanged numerous communications with Class Counsel over the past several months. (*Id.*)

Further, agreeing to serve as the Class Representative meant that Plaintiff publicly placed her name on this suit and opened herself to "scrutiny and attention" which, in and of itself, "is certainly worthy of some type of remuneration." *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 600–01 (N.D. Ill. 2011). Were it not for Plaintiff's willingness to be a public part of this litigation on a classwide basis, her efforts and contributions to the litigation by assisting Class Counsel with their investigation, and her continued participation and monitoring of the case up through settlement, the substantial benefit to the Settlement Class Members afforded under the Settlement Agreement would not exist. (McGuire Decl. ¶ 31.)

The $1,000 Incentive Award requested for Plaintiff is very modest compared to average incentive award granted in class actions, and numerous courts that have granted final approval in similar TCPA settlements have awarded significantly larger incentive awards than the one sought here. *See, e.g., Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-cv-4462, 2015 WL 1399367, at *6 (N.D. Ill. 2015) (awarding $25,000 incentive award); *Satterfield v. Simon & Schuster*, No. 06-cv-2893, Dkt. 131, at 4 (N.D. Cal.) (awarding incentive awards totaling $30,000, including a $20,000 award to one of the class representatives); *Lozano v. Twentieth*

*Century Fox Film Corp.*, No. 09-cv-6344, Dkt. 65, at 5 (N.D. Ill.) (awarding $15,000 incentive award to the plaintiff); *Murray et al v. Bill Me Later, Inc.*, No. 12-cv-04789, Dkt. 78 (N.D. Ill.) (awarding $30,000 incentive awards to both class representatives).

Compensating Plaintiff for the risks and efforts she undertook to benefit the Settlement Class Members is reasonable under the circumstances of this case, especially in light of the excellent results obtained. As shown above, courts have regularly approved incentive awards in similar class action litigation consistent with and far greater than the agreed-upon $1,000 Incentive Award sought here. Moreover, no objection to the Incentive Award has been raised to date. Accordingly, an Incentive Award of $1,000 to Plaintiff is reasonable, justified by Plaintiff's time and effort in this case, and should be approved.

## V.    **CONCLUSION**

For the foregoing reasons, Plaintiff and Class Counsel respectfully request that the Court enter an Order: (i) approving an award of attorneys' fees and costs of $475,000; and (ii) approving an Incentive Award in the amount of $1,000.00 to Plaintiff Serrano in recognition of her significant efforts on behalf of the Settlement Class Members.

Dated:  January 12, 2018

Respectfully submitted,

CARLA SERRANO, individually and on behalf of a class of similarly situated individuals

By: /s/ Eugene Y. Turin
One of Plaintiff's Attorneys

Myles McGuire
Evan M. Meyers
Eugene Y. Turin
MCGUIRE LAW, P.C.
55 W. Wacker Drive, 9th Floor
Chicago, IL 60601
Tel: (312) 893-7002
mmcguire@mcgpc.com
emeyers@mcgpc.com
eturin@mcgpc.com

*Counsel for Plaintiff and Class Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2018, I electronically filed the foregoing *Plaintiff's Unopposed Motion for Approval of Attorneys' Fees, Expenses, and Incentive Award* with the Clerk of the Court using the CM/ECF system. A copy of said document will be electronically transmitted to all counsel of record.

/s/ Eugene Y. Turin